500 A.2d 1096

ALLEGHENY COUNTY

v.

Al MONZO, t/d/b/a Howard Johnson's Motor Lodge, and Gateway Motels, Inc.

Appeal of the PUBLIC AUDITORIUM AUTHORITY OF PITTSBURGH and Allegheny County.

ALLEGHENY COUNTY, Appellant,

v.

Al MONZO, t/d/b/a Howard Johnson's Motor Lodge and Gateway Motels, Inc.

Supreme Court of Pennsylvania.

Argued Sept. 17, 1985.
Decided Nov. 13, 1985.

28

Mark J. Murphy, Robert M. Brown, Eckert, Seamans, Cherin & Mellott, Pittsburgh, for the Public Auditorium of Pittsburgh and Allegheny County.

James J. Dodaro, Sol., Allan J. Opsitnick, Asst. Sol., Pittsburgh, for Allegheny County.

Robert V. Campedel, Clairton, for Al Monzo, etc. and Gateway Motels, Inc.

Before NIX, C.J., and LARSEN, McDERMOTT, HUTCH-INSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the consolidated appeal of Allegheny County and The Public Auditorium Authority of Pittsburgh and Allegheny County (Appellants) from the Order of the Court of Common Pleas of Allegheny County entered on July 17, 1984, by the Honorable Richard G. Zeleznik, finding that the Allegheny County one percent (1%) Hotel Room Rental Tax Ordinance and its underlying enabling act is unconstitutional under the United States and Pennsylvania Constitutions; dismissing the complaint of Allegheny County against Al Monzo and rendering findings in favor of Gateway Motels, Inc. (Appellee).

On December 27, 1977, Allegheny County, pursuant to the Hotel Room Rental Tax Statute,[1] enacted the Hotel

1. Act of December 16, 1977, P.L. 323, No. 94, § 1, 16 P.S. § 4970.2. The relevant sections of the Act provide:

Section 1(b). The County Commissioners in each county of the second class are hereby authorized to impose an excise tax not to exceed one per centum (1%) on the consideration received by each operator of a hotel within the county from each transaction of renting a room or rooms to accommodate transients. The tax shall be collected by the operator from the patron of the room and paid over to the county as herein provided.

(c) The treasurer of each county electing to impose the tax authorized under this section is hereby directed to collect the tax and to deposit the revenues received from the tax in a special fund established solely for purposes of a convention center or exhibition hall.

Room Rental Tax Ordinance of Allegheny County [2] effective in January, 1978, in accordance with its authority under the

The treasurer is hereby authorized to establish rules and regulations concerning the collection of the tax.

(d) Expenditures from the fund established pursuant to subsection (c) shall be used for all purposes which a public authority may determine to be reasonably necessary to the support, operation and maintenance of a convention center or exhibition hall, including, but not limited to the following:

(1) precompletion advertising and publicizing of any convention center or exhibition hall;

(2) promoting and attracting conventions, exhibitions and other functions to utilize the convention center or exhibition hall;

(3) promoting and otherwise encouraging the use of the premises by the public as a whole, or any segment thereof;

(4) operating, furnishing and otherwise maintaining and equipping the premises and realty appurtenant thereto;

(5) furnishing and equipping the building and grounds.

It is the intention of this section that the receipts from any tax imposed pursuant to the provisions of this Act be used to offset the entire operating deficit, if any, of any convention center or exhibition hall, including, equally, shares of any cooperating political subdivision or agency of government incurred pursuant to any agreement presently existing or executed hereafter. The operating deficit shall be determined by any public authority which is the designated operating agency of any convention center or exhibition hall.

(e) The provisions of this section shall remain in force from year to year until December 31, 1983, at which time such provisions shall terminate without further action on the part of the county commissioners. Revenues in excess of amounts needed to offset operating deficits shall be determined by the public authority and may be accumulated, and any revenues may be used to provide part or all of any annual payment to be paid by a county or a political subdivision under any agreement with any public authority created under the Act of July 29, 1953 (P.L. 1034, No. 270), known as the "Public Auditorium Authorities Law," which has been designated as the operating agency for a convention center or exhibition hall in support of bonds issued by the public authority; or to effect necessary expansion or further capital improvements, within the discretion of the cooperating political subdivisions and the public authority ...

2. The relevant sections of the Hotel Room Rental Tax Ordinance of Allegheny County provide:

### Section 3. Tax Imposed

A tax not to exceed one per centum (1%) is hereby imposed on the consideration received by each operator of a hotel within the County of Allegheny from each transaction of renting a room to accommodate transients.

### Section 4. Collection of Tax

The operator of every hotel within the county shall collect the tax from the patron of every room rented. The operator shall then pay over the tax to the county according to the rules and regulations

statute. The ordinance imposed a one percent (1%) room rental tax on the consideration received by each operator of a hotel within the county from each transaction of renting rooms to transients. Subsequently, the County Treasurer promulgated Regulations 101–110 to implement collection and enforcement procedures.

Appellee, Gateway Motel, Inc., owns and operates the Howard Johnson's Motor Lodge located in the Borough of Monroeville, near the Westmoreland County dividing line. As of the effective date of the Ordinance in January, 1978, through May, 1980, Gateway complied with the Ordinance by collecting the one percent (1%) tax from its patrons, filing the necessary tax returns and remitting the tax proceeds to the Treasurer of Allegheny County. However, in June, 1980, Gateway, at the direction of a principal shareholder, Al Monzo, discontinued paying over the tax proceeds and instead began to deposit these funds into an escrow account at a local savings and loan association. Gateway did, however, continue to file the hotel tax returns with the County Treasurer's office.

In early 1981, Appellant, Allegheny County, filed an action in assumpsit in the Court of Common Pleas of Allegheny County against Al Monzo, trading and doing business as Howard Johnson's Motor Lodge, to enforce collection of the tax proceeds collected but not paid over to the County Treasurer. The stipulated amount in controver-

concerning the collection of the tax established by the County Treasurer.

### Section 5.  Collection of Unpaid Taxes

All taxes due and unpaid under this ordinance shall be recoverable by the county pursuant to rules and regulations established by the County Treasurer.

### Section 6.  Penalties

(A) Any person violating any of the provisions of this ordinance shall be subject to the following penalties:

Upon conviction in a summary proceeding, a fine not in excess of One Hundred ($100.00) Dollars to be paid to the use of the County with costs of prosecution or to undergo imprisonment ir the County Jail for not more than thirty (30) days, or both.

(B) Each violation shall constitute a separate offense subject to the penalties outlined above.

sy as of the date of trial was $59,766.05. Subsequently, Allegheny County filed an amended complaint to include Gateway as a defendant. Appellees defended the action by challenging the constitutionality of the statute and ordinance as violative of the due process, uniformity and equal protection provisions of both the Pennsylvania and the United States Constitutions. In its opinion of October 28, 1983, the trial court dismissed the action as to Al Monzo, as an individual, and declared the statute and ordinance invalid under Article VIII, Section 1, of the Pennsylvania Constitution and the Fourteenth Amendment to the United States Constitution.

On January 25, 1984, Appellant, Public Auditorium Authority of Pittsburgh and Allegheny County, filed a Petition for Leave to Intervene and was granted leave to intervene as a plaintiff on February 7, 1984. Arguments on Exceptions to the Findings, filed by the County and expressly adopted by the Authority, were heard by the trial court. On July 17, 1984, the Exceptions were dismissed and a final order was issued entering judgment for Gateway. Timely notices of appeal were filed by both the County and the Authority with the Commonwealth Court. On October 2, 1984, the Commonwealth Court entered an order consolidating the appeals and, on November 16, 1984, entered an order transferring the appeal to this Court.[3]

3. Exclusive jurisdiction to hear this appeal is conferred upon this Court by 42 Pa.C.S. § 722(7), which states in pertinent part:

The Supreme Court shall have exclusive jurisdiction of appeal from final orders of the courts of common pleas in the following classes of cases:

(7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.

Accordingly, pursuant to 42 Pa.C.S. § 5103(a), the consolidated appeals were transferred from the Commonwealth Court. That section provides:

§ 5103. *Transfer of erroneously filed matters*

(a) General Rule.—If an appeal or other matter is taken to or brought in a court or magisterial district which does not have

In this consolidated appeal, we are asked to consider: (1) whether Appellee has standing to challenge the constitutionality of the statute and ordinance; and (2) whether Appellee has met its burden of proof that the tax violates the Uniformity Clause of the Pennsylvania Constitution and the Due Process and Equal Protection Clauses of the United States Constitution.

■ The essence of Appellants' standing argument is that Gateway is not the taxpayer under the statute and ordinance, but merely the collector, and that Appellee has no direct and substantial interest in its claim of unconstitutionality because of its failure to prove financial injury as a result of the tax. Appellants, therefore, conclude that the trial court erred in its ruling that Gateway has standing to challenge the tax. We do not agree.

Appellants' first argument, that Gateway lacks standing to challenge the tax by virtue of its status as collector and not taxpayer, is clearly without merit under applicable Pennsylvania case law.

In both *Airway Arms, Inc. v. Moon Area School District,* 498 Pa. 286, 446 A.2d 234 (1982), *app. dismissed sub. nom. Grant-Oliver Corp. v. Moon Area School District,* 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983); and *William Penn Parking Garage, Inc. v. City of Pittsburgh,* 464 Pa. 168, 346 A.2d 269 (1975) (plurality opinion), the tax collection liability of parking lot operators was sufficient to confer standing to challenge the constitutionality of a tax imposed upon the consideration received by the operators from their patrons. The test for standing articulated by this Court in *William Penn* was "that one who seeks to challenge governmental action must show a direct and substantial interest. . . . In addition he must show a sufficiently close causal connection between the challenged ac-

jurisdiction of the appeal or other matter, the court or district justice shall not quash such appeal or dismiss the matter, but shall transfer the record thereof to the proper court or magisterial district of this Commonwealth, where the appeal or other matter shall be treated as if originally filed in the transferee court or magisterial district on the date first filed in a court or magisterial district.

tion and the asserted injury to qualify the interest as 'immediate' rather than 'remote'." *Id.*, 464 Pa. at 202, 346 A.2d at 286.

In the Court's analysis of the requirements of the standing test, "substantial interest simply means that the individual's interest must have substance—there must be some discernible adverse effect to some interest other than the abstract interest of all citizens in having others comply with the law.... [D]irect simply means that the person claiming to be aggrieved must show causation of the harm to his interest by the matter of which he complains....

"The remaining requirements are that the interest be 'immediate' and 'not a remote consequence of the judgment'.... Here, the concern is with the nature of the causal connection between the action complained of and the injury to the person challenging it.... [I]t is clear that the possibility that an interest will suffice to confer standing grows less as the causal connection grows more remote." *Id.*, 464 Pa. at 193–197, 346 A.2d at 282–283.

In applying the test to the facts, the Court concluded that the causal connection between the tax and the injury to the parking operators was sufficiently close to afford them standing. In support of this conclusion, the Court noted: "While the tax falls initially upon the patrons of the parking operators, it is levied upon the very transaction between them. Thus the effect of the tax upon their business is removed from the cause by only a single short step." *William Penn,* 464 Pa. at 208, 346 A.2d at 289.

In *Airway Arms, Inc. v. Moon Area School District, Id.,* this Court again granted standing to parking lot operators to challenge a tax imposed upon the consideration received from their patrons, stating that "an examination of the record including the pleadings indicates Appellees are liable to pay or collect the tax and are, thus, aggrieved taxpayers." *Id.,* 498 Pa. at 296, 446 A.2d at 239. *See also, National Geographic Society v. California Board of Equalization,* 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), (challenger of the tax had only use-tax collection

liability and standing was assumed.) Under the Ordinance in question in the instant case, Gateway is the party responsible to collect and pay over to the county a tax which is imposed upon the consideration received from its patrons by an operator of a hotel within Allegheny County. Further, Appellee is subject to penalties for non-compliance with the ordinance. Surely, under these circumstances, it cannot be said that Appellee is any less an "aggrieved taxpayer" than the parking lot operators in the aforementioned cases.

Appellants' contention that Appellee has failed to prove financial injury due to the tax and, therefore, lacks a direct and substantial interest in the outcome of the action is, likewise, without merit. Our examination of the record reveals that Appellee presented sufficient evidence at trial whereby the factfinder could reasonably have concluded that Gateway is significantly affected and harmed by the operation of the tax. Testimony adduced at trial supports Appellee's claim that: (1) it is discouraged from raising its rates because the tax increases the room rental fee; (2) the addition of the tax to the room rate places hotel and motel owners who are competing with out-of-county establishments at an economic disadvantage; (3) the imposition of the tax causes the hotels outside of the City of Pittsburgh to finance their competitors located in the City of Pittsburgh; and (4) the tax benefits only the Convention Center, which brings convention business into downtown Pittsburgh and takes patrons away from Appellee and other Allegheny County hotels located outside of downtown Pittsburgh.

It is within the province of the trial judge, sitting without a jury, to judge the credibility of the witnesses and to weigh their testimony. On appeal, it is not the duty of the appellate court to find the facts, but to determine whether there is evidence in the record to justify the trial court's findings of fact. *Lawner v. Engelbach,* 433 Pa. 311, 249 A.2d 295 (1969). This Court is bound by the trial judge's findings unless those findings are not based on competent evidence. *2401 Penn Ave. v. Fed. of Jewish Agencies,* 507 Pa. 166, 489 A.2d 733 (1985). The evidence

offered in support of the foregoing claims is clearly sufficient to establish financial injury to Appellee. Therefore, we find no error in the trial court's ruling that Appellee had the requisite interest and standing to maintain its defense.

We now proceed to the central issue in this appeal: Appellants' contention that neither the statute nor the ordinance violates the provisions of the Uniformity Clause of the Pennsylvania Constitution, nor of the Due Process and Equal Protection Clauses of the United States Constitution. It is argued that Appellee failed to sustain its heavy burden of proof on either ground. It is well-settled that there is a presumption that tax enactments are constitutionally valid and that the burden of proving invalidity is upon the person challenging the tax. *Alco Parking Corporation v. City of Pittsburgh*, 453 Pa. 245, 307 A.2d 851 (1973), *reversed on other grounds*, 417 U.S. 369, 94 S.Ct. 2291, 41 L.Ed.2d 132 (1974); *Philadelphia Life Insurance Co. v. Commonwealth*, 454 Pa. 157, 309 A.2d 811 (1973).

However, it is incumbent upon the court in determining the validity of a tax to consider the nature and effect of the measure. *Lawrence v. State Tax Commission*, 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102 (1932); *American Oil Co. v. Neill*, 380 U.S. 451, 85 S.Ct. 1130, 14 L.Ed. 1 (1965); *Appeal of School District of City of Allentown*, 370 Pa. 161, 87 A.2d 480 (1952).

In *Alco Parking Corp. v. Pittsburgh*, supra, this Court noted: "the Commonwealth and its political subdivisions, in the exercise of the taxing power, are subject to the requirements of equal protection and uniformity. *Allied Stores of Ohio, Inc. v. Bowers*, 358 U.S. 522, 79 S.Ct. 437, 3 L.Ed.2d 480 (1959); *Commonwealth v. Life Assurance Co. of Pa.*, 419 Pa. 370, 214 A.2d 209 (1965)." *Id.*, 353 Pa. at 254–55, 307 A.2d at 856. In *Allied Stores*, the United States Supreme Court sustained an ad valorem tax imposed upon merchandise held in storage within the state by residents of the state even though such merchandise, if held by non-residents, was exempted from the tax. Despite the fact that this classification resulted in a tax advantage in favor of

non-residents, the court determined that the classification was not arbitrary or unreasonable and, therefore, not violative of the equal protection clause. The court's rationale was that the state may have had other reasonable grounds for the distinctive treatment accorded to residents and non-residents. However, the court cautioned that "there is a point beyond which the state cannot go without violating the equal protection clause. The state must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 [40 S.Ct. 560, 562, 64 L.Ed. 989 (1920)]; *Louisville Gas & Electric Co. v. Coleman*, 277 U.S. 32, 37 [48 S.Ct. 423, 425, 72 L.Ed. 770 (1928)]; *Air-Way Electric Appliance Corp. v. Day*, 266 U.S. 71, 85 [45 S.Ct. 12, 15, 69 L.Ed. 169 (1924)]; *Schlesinger v. Wisconsin*, 270 U.S. 230, 240 [46 S.Ct. 260, 261, 70 L.Ed. 557 (1926)]; *Ohio Oil Co. v. Conway*, 281 U.S. 146, 160 [50 S.Ct. 310, 314, 74 L.Ed. 775 (1930)]." *Id.*, 358 U.S. at 527, 79 S.Ct. at 441.

*Allied* must be distinguished from the instant case. The tax at issue in *Allied* was an ad valorem tax which was uniformly applied to *all* residents throughout the state and which was a general tax for general public use. Similarly, in *Commonwealth v. Life Assurance Co. of Pa.*, supra, this Court sustained a statute which imposed a gross premiums tax upon domestic life insurance companies at the rate of two (2%) percent on the premiums received from business done within the Commonwealth, while an identical tax was imposed upon all foreign insurance companies without regard to the type of coverage provided. In sustaining the tax against equal protection and uniformity challenges, this Court relied heavily on *Allied*, as the tax at issue was also a general tax for general public use. In contrast, the tax in the instant case is not a general tax for the purpose of raising revenues for public use; rather, it is a special tax imposed for the sole purpose of funding one convention

center in Allegheny County. Therefore, it does not stand on the same footing as the tax in *Allied* and *Life Assurance Co.*

This Court noted in *Airway Arms, Inc. v. Moon Area School District*, supra,

> A state's taxing power is subject to the constitutional restraints of the Fourteenth Amendment to the Constitution of the United States, and the test for determining whether property has been taken without due process of law is:
>
> > '... whether the taxing powers exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state. The simple but controlling question is whether the state has given *anything* for which it can ask return.' (Emphasis added.)
>
> *Wisconsin v. J.C. Penney*, 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267 (1940).

*Id.*, 498 Pa. at 303, 446 A.2d at 243. The tax involved in *Airway* was also sustained against a due process challenge but, again, it was a general tax for the express purpose of raising revenue for the general public use of the school district. As such, it is also distinguishable from the tax here at issue.

In *Commonwealth v. Staley*, 476 Pa. 171, 381 A.2d 1280 (1978), this Court reaffirmed the principle that "if the result of a taxing scheme is the imposition of substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional." *Id.*, 476 Pa. at 180, 381 A.2d at 1284.

■ Where the benefit received and the burden imposed is palpably disproportionate, a tax is not only a taking without due process under the Fourteenth Amendment to the United States Constitution, but also an arbitrary form of classification in violation of equal protection and state uniformity standards. *Thomas v. Kansas City So. Ry.*, 261 U.S. 481, 43 S.Ct. 440, 67 L.Ed. 758 (1923); *Morton Salt Co. v. City of South Hutchinson*, 159 F.2d 897 (10th Cir.1947); *Appeal of School District of City of Allentown*, supra.

In *Thomas*, the United States Supreme Court struck down a tax authorized by a special law to fund a local drainage project. The cost of the project was to be borne by all landowners, including two (2) railroads, companies which would have been obligated to pay fifty-seven (57%) percent of the total cost of the project, but would have received only indirect benefits. Justice Brandeis noted the effect of the tax:

> The tax laid imposes upon the railroad, which can receive no direct or immediate benefit, a very heavy burden; and the lands which will receive a large direct (and possibly immediate) benefit, are required to bear only a very small part of the burden. *Id.*, 261 U.S. at 485, 43 S.Ct. at 441.

Similarly, in *Morton Salt*, the tax at issue was assessed for the payment of bonds to finance a waterworks system. The company was required, under the taxing scheme, to pay forty-six (46%) percent of the project's cost, for which it would receive very little benefit. The Circuit Court granted a temporary injunction pending full hearing on the matter, but emphasized that, although the waterworks system would redound to the benefit of the whole community, the total tax burden, when compared to the indirect benefit to be received, "certainly poses a serious constitutional question." *Id.* at 902.

In *City of Allentown*, this Court struck down a school district resolution levying a mercantile tax which divided wholesalers and retailers into separate classes and set up different tax computation formulae for the various classes. It was noted that while the classification was not arbitrary or unreasonable, the different tax computation formulae *were* arbitrary and had no reasonable or practical justification, thus creating substantial and unjustifiable inequality of tax burden. *Id.*, 370 Pa. at 167, 87 A.2d at 484.

It has long been recognized by this Court that a tax is an exaction for the support of government and that, in classifying persons for taxation, there is an obligation on the part of the taxing power to make available some benefit to those

taxed. *Kiker v. City of Philadelphia*, 346 Pa. 624, 31 A.2d 289 (1943); *Commonwealth v. Life Assurance Company of Pa.*, supra. Further, it has been held by the United States Supreme Court that money may not be expropriated constitutionally from one group to the benefit of another. *U.S. v. Butler*, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477 (1935).

*Butler* involved a challenge to the constitutionality of processing and floor-stock taxes authorized by the Agricultural Adjustment Act of 1933. The plan under the Act was to increase the prices of certain farm products for the farmer by decreasing the quantities produced. The decrease was to be attained by making payments of money to farmers who, under agreements with the Secretary of Agriculture, reduced their acreage and crops, and the money for this purpose was exacted, as a tax, from those who first processed the commodities. In striking down the challenged tax, the United States Supreme Court noted:

> A tax in the general understanding of the term, and as used in the Constitution, signifies an exaction for the support of the Government. The word has never been thought to connote the expropriation of money from one group for the benefit of another. We may concede that the latter sort of imposition is constitutional when imposed to effectuate regulation of a matter in which both groups are interested and in respect of which there is a power of legislative regulation. But manifestly no justification for it can be found unless as an integral part of such regulation. The exaction cannot be wrested out of its setting, denominated an excise for raising revenues and legalized by ignoring its purpose as a mere instrumentality for bringing about a desired end. *Id*, at 61, 56 S.Ct. at 317.

Article VIII, Section 1, of the Constitution of Pennsylvania, P.S. provides:

> All taxes shall be uniform upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws....

This Court declared in *City of Allentown*, supra:

This means that the classification by the legislative body must be reasonable and the tax must be applied with uniformity upon similar kinds of business or property and with substantial equality of the tax burden to all members of the same class: *Commonwealth v. Girard Life Insurance Co.*, 305 Pa. 558, 158 A. 262; *Knisely v. Cotterel*, 196 Pa. 614, 46 A. 861 [(1900)]; *Dufour v. Maize*, 358 Pa. 309, 56 A.2d 675 [(1948)]; *Commonwealth v. McCarthy*, 332 Pa. 465, 3 A.2d 267 [(1939)]; *Dole v. Philadelphia*, 337 Pa. 375, 11 A.2d 163 [(1940)]....

The imposition of taxes which are to a substantial degree unequal in their operation or effect upon similar kinds of business or property, or upon persons in the same classification is prohibited; Cf. *Com. v. Overholt & Co., Inc.*, 331 Pa. 182, 190–191, 200 A. 849 [(1938)]; *Pollack v. Farmers' Loan and Trust Co.*, 157 U.S. 429, 599 [15 S.Ct. 673, 696, 39 L.Ed. 759 (1895)]. Moreover while reasonable and practical classifications are justifiable, where a method or formula of computing a tax will, in its operation or effect, produce arbitrary or unjust or unreasonably discriminatory results, the constitutional provision relating to uniformity is violated: *Turco Paint and Varnish Co. v. Kalodner*, 320 Pa. 421, 184 A. 37 [(1936)]; *Hans Rees' Sons v. North Carolina*, 283 U.S. 123, 51 S.Ct. 385, 75 L.Ed. 879 [(1931)].

We may aptly repeat what was said by (former Chief) Justice Maxey in *Com. v. Overholt & Co., Inc.*, 331 Pa., supra, page 191 [200 A. 849]:

'a tax to be uniform must operate alike on the classes of things or property subject to it. The tax herein challenged presents an outstanding example of a legislatively imposed inequality of burden, and to protect the citizen against it is a judicial duty....'

*Id.*, 370 Pa. at 167–168, 170, 87 A.2d 483, 484.

In light of the foregoing principles, it becomes patently clear that the legislation in question does not pass constitu-

tional muster. An examination of the incidence of this tax and its effects establishes that a substantial portion (perhaps a majority) of the class taxed are afforded no benefits whatsoever, while being significantly burdened. The only reason for creating the tax was to finance the David L. Lawrence Convention Center which is located in downtown Pittsburgh. The statute effectively excludes all other municipalities and counties from the tax authorization. Thus, they are prevented from enjoying the benefits which inure to Allegheny County, the City of Pittsburgh, and its convention and hotel interests and other business entities in downtown Pittsburgh.

Allegheny County hotels in municipalities surrounding the City of Pittsburgh are being required to collect and pay a tax which provides no benefits to that portion of the class, but which does enable City of Pittsburgh hotels and businesses located near the convention center to benefit immeasurably. Gateway, located in the distant municipality of Monroeville Borough, in essence, is being required to finance its competition. The tax, in effect, subsidizes downtown Pittsburgh hotels and businesses at the expense of the remaining portion of the class taxed, while denying participation by otherwise eligible class members in the tax-funded programs.

Appellee's claim that the only beneficiaries of the taxing scheme are those hotels and businesses located in downtown Pittsburgh is supported by the testimony of Mr. John W. Besanceney, Executive Vice-President of the Pittsburgh Convention and Visitors Bureau, to the effect that only the *downtown* (City of Pittsburgh) merchants, hotel operators, restaurants, and other business entities benefit from the tax; and the testimony of Mr. R. Douglas Long, Executive Director of the Allegheny County Public Auditorium Authority, that convention patrons tend to obtain lodging in close proximity of the convention center and that hotels in center city Pittsburgh are chosen first for convention center attractions.

Appellants argue that the tax is uniformly applied at one percent (1%) on all motels and hotels within Allegheny County, and that there is no requirement that a taxpayer receive benefits proportional to the tax burden imposed, or even that a direct benefit be received at all. In support of this proposition, Appellants erroneously rely on *Paul L. Smith, Inc. v. Southern York County School District*, 44 Pa.Commonwealth Ct. 227, 403 A.2d 1034 (1979), which held that the imposition of a tax by a school district upon the construction of, or a conversion to, residences in the district was a valid privilege tax upon the use of realty as a residence and was not violative of the uniformity requirements of Art. VIII, § 1, of the Pennsylvania Constitution. The purpose of the Resolution as specifically stated was to raise additional revenues for general revenue purposes. As this Court stated in *Airway Arms*, supra, "a taxpayer may not successfully object, on the ground that he derives no benefit from taxation and thereby is denied due process, to taxation for general public use which includes taxes for schools." *Id.*, 498 Pa. at 304, 446 A.2d at 244.

The tax in the instant case is not a tax for general public use; therefore, the principle espoused by Appellants is not applicable in this case.

Similarly, Appellants' reliance on *Commonwealth v. Staley*, supra, for the proposition that the law does not require any direct benefit, or equal benefit to the general public, and that what is required is substantially equal burdens among persons similarly situated, is also misplaced. The tax at issue in *Staley* was an income tax whose proceeds were to be used for general public purposes. Further, all persons liable to collect and pay the instant tax are not similarly situated; therefore, they are not equally burdened.

While it is generally true that a tax is not unconstitutional simply because it does not confer a benefit on everyone who pays it or because the burden and benefit are unequal, the authority cited by Appellants in support of this proposition are all cases dealing with taxes enacted under general laws. Appellants fail to take notice that the tax in the

instant case is not a general tax but a special tax which is prohibited under Pa. Const. Art. 3, § 32, which provides: "The General Assembly shall pass no local or special law in any case which has been or can be provided for by general law...." A special tax is one levied for a special local purpose for the benefit of a part of the body politic and which rests upon the supposition that a portion of the public is specially benefitted. 84 C.J.S., *Taxation*, § 3.

> Legislation becomes special when it cannot under its terms operate generally. Classification is allowed because of necessity ... springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes and imperatively demanding legislation for each class separately that would be useless and detrimental to the others. *Commonwealth v. Gumbert,* 256 Pa. 532, 100 A. 990 (1917).

In *Gumbert,* this Court struck down as special legislation a statute which was enacted authorizing counties with populations not less than 750,000 nor more than 1.2 million to establish schools for female children under the jurisdiction of the juvenile courts. There, as in the instant case, only Allegheny County satisfied the statutory limitation. The language of the Court is particularly applicable to the facts of this case:

> It cannot with any reason be contended that the counties thus associated in the act as a class are marked by any common distinction or peculiarity which would make general legislation affecting all counties in the state burdensome, oppressive or inconvenient as to them. *Id.,* 256 Pa. at 533, 100 A. at 992.

The reason underlying the special legislation prohibition of Pa. Const. Art. 3, § 32, was articulated by this Court in *Haverford Tp. v. Siegle,* 346 Pa. 1, 28 A.2d 786 (1942): "That section was adopted to put an end to the flood of privileged legislation for particular localities...." *Id.,* 346 Pa. at 3, 28 A.2d at 788.

The instant taxing statute, by its terms, applies only to Allegheny County, as it is the only second class county in Pennsylvania. Due to the limited duration of the statute,

there is no possibility that any other county would achieve second class status before the termination date of December 31, 1983.[4] The result is that the statute enacted and the tax imposed is for the purpose of funding *one* convention center in the entire Commonwealth. The burden of the tax is imposed on hotels within the entire county when, in reality, only those hotels and businesses located in or very near downtown (center city) Pittsburgh are benefitted. Neither the legislative history nor the trial testimony indicates any reason or peculiar need of the class of counties authorized to enact the tax. Further, the legislatively declared benefit is itself defeated by the operation and effect of this tax. Section 4 of the General State Authority Act[5] provides:

> ... That the purpose and intent of this act being to benefit the people of this Commonwealth by among other things, increasing their commerce and prosperity, and not to unnecessarily (sic) burden or interfere with existing business by the establishment of competitive enterprises....

■ The instant taxing statute clearly falls within the category of special taxes prohibited by Pa. Const. Art. 3, § 32. Further, the burdens imposed bear no reasonable relation to the benefits received because there are no benefits to a majority of the class taxed. Such effect can hardly comport with the reasonableness requirement of the uniformity provision of the Pennsylvania Constitution. We see no reason to restrict the benefits of the tax to Pennsylvania's only second class county. The opportunity for development of local meeting facilities should be afforded to all of the state's smaller municipalities. The development of civic facilities to stimulate economic growth and to promote tourism are statewide concerns. The standards of the

4. During the pendancy of this case, the General Assembly amended the Hotel Room Rental Tax Statute to eliminate this termination date, as well as making other substantial changes which are not relevant here, since the amended statute is not before this Court.

5. Act of 1949, P.L. 372, as amended July 18, 1961 (P.L. 790) and September 23, 1961 (P.L. 1622).

uniformity clause and of the equal protection clause are identical. *Commonwealth v. Life Assurance Co. of Pa.,* supra. The test of uniformity is whether there is a reasonable distinction and difference between the classes of taxpayers sufficient to justify different tax treatment. *F.J. Busse Co. v. Pittsburgh,* 443 Pa. 349, 358, 279 A.2d 14, 19 (1971). *See also, Amidon v. Kane,* 444 Pa. 38, 46–48, 279 A.2d 53, 58–59 (1971).

■ Upon our review of the facts of this case and the law as previously stated, we are compelled to agree with the trial court that the subject taxing scheme "is at once a taking of private property without due process of law, an arbitrary form of classification, an appropriation of money from one group to the benefit of another, that it is unequal in its operation or effect upon similar businesses, and that it is local or special legislation contrary to both the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania." *Allegheny County v. Al Monzo,* No. GD 81–5649, slip opinion at p. 17.

Affirmed.

FLAHERTY, J., did not participate in the decision or consideration of this case.

NIX, C.J., concurs in the result.