**BARREL OF MONKEYS, LLC, d/b/a Harris Grill; Lawrenceville Brewery, Inc., a Pennsylvania Business Corporation t/d/b/a the Church Brew Works, individually and on behalf of all others similarly situated; and Friends Against Counterproductive Taxation, Inc., a Pennsylvania Not–for–Profit Corporation, Appellants**

v.

**ALLEGHENY COUNTY.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 2011.

Decided Feb. 8, 2012.

Ronald D. Barber, Pittsburgh, for appellants.

George M. Janocsko, Pittsburgh, for appellee.

BEFORE: LEADBETTER, President Judge,[1] and PELLEGRINI, Judge, and SIMPSON, Judge.

OPINION BY Judge SIMPSON.

In this appeal from the Court of Common Pleas of Allegheny County (trial court), we consider the validity of the county ordinance known as the "Drink Tax," Ordinance No. 54–07–OR/3548–07. Specifically, the Drink Tax is challenged on three bases: the Drink Tax rests solely on a state statute, Act 44 of 2007, 53 Pa.C.S. § 8602, that violates the "single subject" rule of the Pennsylvania Constitution; the Drink Tax violates the uniformity clause of the Pennsylvania Constitution and the equal protection clause of the

---

1. This case was assigned to the opinion writer before Judge Pellegrini succeeded Judge Leadbetter as President Judge.

United States Constitution; and, the Drink Tax depended for its passage on a vote by a member of County Council who was ineligible to vote consequent to the conflict-of-interest provisions of the County Administrative Code. After careful review, we conclude that the Drink Tax does not violate the constitutional provisions in question, and the conflict-of-interest provisions of the County Administrative Code do not empower courts to void the member's vote. Thus, we affirm.

## I. Background

This appeal comes to us after the trial court considered the parties' cross-motions for summary judgment. The trial court granted Allegheny County's motion for summary judgment and denied the motion of the named Plaintiffs/Appellants. Because no party questions the underlying facts, we rely on the background information set forth in the trial court's opinions.

In 2007, the General Assembly passed Act 44 of 2007, which, among other things, authorized a county of the second class, such as Allegheny County, to obtain support for transit systems by imposing a tax on the sale at retail of liquor and malt and brewed beverages within the county. 53 Pa.C.S. § 8602. As will be discussed later, such a taxing ordinance was to be modeled on the act known as the First Class School District Liquor Sales Tax Act of 1971.[2] *Id.*

In response to this statutory authorization, Allegheny County Council passed the Drink Tax on December 4, 2007. Section 5–808.01(B) of the Allegheny County Administrative Code requires an affirmative vote of at least 2/3 of the seated members of County Council with respect to any ordinance which implements a new tax. County Council was comprised of 15 members, all of whom were seated at the time of the vote on the Drink Tax. Thus, implementation of the Drink Tax required 10 affirmative votes. The vote for the Drink Tax was 10 to four (with one abstention). Included among the County Council persons voting affirmatively was Dr. Charles Martoni, who was also a director of the ordinance's financial beneficiary, the Port Authority of Allegheny County. Without Dr. Martoni's vote the Drink Tax lacked the required affirmative votes.

Shortly thereafter, the named Plaintiffs/Appellants [3] brought suit on their own behalf and on behalf of all other liquor-licensed restaurants in Allegheny County subject to the Drink Tax. They asserted that the Drink Tax's enabling legislation, Act 44 of 2007, was invalid because it violated the Pennsylvania Constitution "single subject" rule. Also, they asserted that because the Drink Tax burdened sales of alcoholic beverages at restaurants but not sales at similarly situated state-owned liquor stores or beer distributors, the Drink Tax violated the tax uniformity protection of the Pennsylvania Constitution and the equal protection provisions of the United States Constitution. Finally, they asserted the Drink Tax was unlawfully enacted because Dr. Martoni had a conflict of interest which precluded his vote under the Accountability, Conduct and Ethics Code of Allegheny County, Article 1013 of the County Administrative Code (County Ethics Code).

In July 2008, in response to the County's preliminary objections, the trial court en-

---

**2.** Act of June 10, 1971, P.L. 153, *as amended,* 53 P.S. §§ 16131–16140.

**3.** By stipulation, the caption of the class action complaint was amended to substitute the current named Plaintiffs/Appellants for those originally named. Reproduced Record at 47a–49a.

tered an order striking off the "single subject" challenge to the Drink Tax ordinance's enabling legislation. No opinion accompanied the order.

The parties agreed that the matter could be resolved by summary judgment, and a consent order was entered directing the parties to file cross-motions. By order filed March 8, 2011, the trial court held the Drink Tax valid. It therefore granted the County's motion for summary judgment and denied the Plaintiffs/Appellants' motion, thereby disposing of all remaining claims.

Plaintiffs/Appellants filed a timely notice of appeal from the March 8, 2011 order. In a subsequently filed opinion, the trial court explained why it rejected the remaining uniformity/equal protection challenge and the County Ethics Code challenge.

Shortly after the trial court's opinion was rendered, on June 1, 2011, Plaintiff/Appellants filed an "Amended Notice of Appeal." They sought to clarify their intention to also appeal the earlier order sustaining preliminary objections to the "single subject" challenge to the enabling legislation.

Thereafter, the trial court filed a supplemental opinion addressing the "single subject" rule. Procedurally, the trial court questioned the ability of the amended notice of appeal to preserve an issue disposed of in an order not described in the original, timely notice of appeal. Substantively, the trial court determined the enabling state legislation, Act 44 of 2007, did not violate the "single subject" rule because the tax authorization to financially support transit systems was germane to the unifying subject of the legislation, transportation.

## II. Issues

On appeal to this Court, Plaintiffs/Appellants raise the same three substantive issues that were set forth in their pleadings before the trial court. In addition, the County argues that the "single subject" challenge is waived because of the way it was handled during the appeal process.

 Our scope of review of a trial court's order sustaining a preliminary objection or granting summary judgment is limited to determining whether the trial court committed an error of law or an abuse of discretion. *Geneva House, Inc. v. Minsec of Scranton, Inc.*, 25 A.3d 427 (Pa. Cmwlth.2011); *Baker v. Central Cambria Sch. Dist.*, 24 A.3d 488 (Pa.Cmwlth.2011). When considering preliminary objections, the appellate court must accept all well-pled facts and reasonable inferences therefrom as true. *Baker.* Moreover, summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that a moving party is entitled to judgment as a matter of law. *Geneva House, Inc.* The reviewing court must view the record in the light most favorable to the nonmoving party, resolving all doubts as to the existence of a genuine issue of material fact against the moving party. *Id.* When the facts are so clear that reasonable minds cannot differ, a trial court may properly enter summary judgment. *Id.*

 Our law provides a strong presumption that legislative enactments, as well as the manner in which legislation is enacted, do not violate our Constitution. *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 292, 877 A.2d 383, 393 (2005) (*PAGE*). A party that challenges the constitutionality of a statute bears "a very heavy burden of persuasion" to overcome this presumption. *Id.* "Accordingly, a statute will not be declared unconstitution-

al unless it *clearly, palpably,* and *plainly* violates the Constitution. All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster." *Id.* (Emphasis in original.) (Citations omitted).

## III. Discussion

### A. Waiver

The County claims the "single subject" challenge was waived because the Plaintiffs/Appellants did not reference the July 2008 order which disposed of the issue in their original, timely notice of appeal. They argue that only orders referenced within the time to appeal are preserved, and the amended notice of appeal was ineffective to preserve the issue because it was not filed within that time. The County briefly seeks to distinguish the cases on which Plaintiffs/Appellants rely based on factual differences.

Plaintiffs/Appellants argue that the omission to specify the previous interlocutory order should not be deemed a waiver. They cite various cases.[4]

The trial court questioned whether the issue was preserved by the amended notice of appeal, and it cited *Thorn v. Newman,* 113 Pa.Cmwlth. 642, 538 A.2d 105 (1988) (no known authorization for party to file amended notice of appeal for purpose of effecting an appeal from an order different from and earlier than the order originally noted).

Pennsylvania Rule of Appellate Procedure 341(b)(1) defines a final order from which an appeal may be taken as including any order that "disposes of all claims and

of all parties...." In this case, the trial court's July 2008 order addressing preliminary objections was not a final appealable order when entered because it did not dispose of all claims and of all parties; however, the trial court's order filed March 8, 2011, unquestionably disposed of all remaining claims and was an appealable order.

■ Although not cited by the parties or the trial court, this issue is controlled by *K.H. v. J.R.,* 573 Pa. 481, 826 A.2d 863 (2003). In *K.H.* our Supreme Court granted review for the purpose of considering, among other things, "whether a single notice of appeal from an order denying post-trial relief is sufficient to permit review of a prior order granting summary judgment...." *Id.* at 489, 826 A.2d at 868. The Court stated, "[I]n the context of a single action, a notice of appeal filed from the entry of judgment will be viewed as drawing into question any prior non-final orders that produced the judgment." *Id.* at 493, 826 A.2d at 871.

Under the rule of *K.H.,* the notice of appeal from the trial court's order filed March 8, 2011, also drew into question the July 2008 order addressing preliminary objections. Of further significance, the procedures here were sufficient to allow the parties and the trial court to address the merits of the earlier order, and no prejudice is evident. Accordingly, we decline the invitation to treat the "single subject" challenge as waived.

### B. "Single Subject" Rule

■ Article III, Section 3 of the Pennsylvania Constitution, titled "Form of Bills," provides:

---

4. *Strausser v. PRAMCO, III,* 944 A.2d 761 (Pa.Super.2008) (piecemeal dismissals become final and appealable in a single appeal when the last dismissal occurs), *Zeffiro v. Gillen,* 788 A.2d 1009 (Pa.Super.2001) (reference to incorrect order in notice of appeal does not

disturb appellate court's jurisdiction to review the correct order), and *Guy M. Cooper, Inc. v. East Penn School District,* 894 A.2d 179 (Pa. Cmwlth.2006) (single judge opinion; attaching wrong order to notice of appeal not grounds to quash appeal).

No bill shall be passed containing more than one subject, which shall be clearly expressed in its title, except a general appropriation bill or a bill codifying or compiling the law or a part thereof.

PA. CONST. art. III, § 3. This provision sets forth dual mandates for the General Assembly; it prohibits the passing of a bill that contains more than one subject and requires that the subject be clearly expressed in its title. *Stilp v. Commonwealth*, 588 Pa. 539, 905 A.2d 918 (2006). In broad terms, Article III endeavors to place restraints on the legislative process and to encourage an open and accountable government. *PAGE*. Section 3 curbs the practice of incorporating a variety of distinct and independent subjects into one bill. *Id.*

█ In defining Section 3's single-subject requirement as it applies to amendments during the legislative process, the Supreme Court stated in *PAGE*, 583 Pa. at 296, 877 A.2d at 395 (citations omitted):

While recognizing the importance of Section 3, we acknowledged that bills are frequently subject to amendments as they proceed through the legislative process and not every supplementation of new material is violative of the Constitution. Thus, where the provisions added during the legislative process assist in carrying out a bill's main objective or are otherwise "germane" to the bill's subject as reflected in its title,' the requirements of Article III, Section 3 are met.

Article III, Section 3 must have, however, some limits on germaneness, for otherwise virtually all legislation—no matter how diverse in substance—would meet the single-subject requirement, rendering the strictures of Section 3 nugatory. *Id.* Thus, defining the constitutionally-valid topic too broadly would render the safeguards of Section 3 inert. *Id.* Conversely, the requirements of Section 3 must not become a license for the judiciary to "exercise a pedantic tyranny" over the efforts of the Legislature. *Id.* at 296, 877 A.2d at 396. In view of these concerns, the proper focus is whether there is a "single unifying subject" to which all of the provisions of the bill are germane. *Stilp; PAGE.*

█ In the present case, Plaintiffs/Appellants do not challenge the title of the bill which eventually became Act 44 of 2007, nor do they contest that the overarching subject of the bill was transportation. Instead, they rely exclusively on *PAGE*, and they argue that two separate enactments are required when taxing one industry and directing that money to a separate and distinct industry; otherwise, legislation runs afoul of the "single subject" rule. Relevantly, in *PAGE*, the Supreme Court relied on the "single subject" rule in invalidating several provisions of the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101–1904, which raised revenue from gaming activities but distributed some funds to activities unrelated to gaming. The Court held that the source-only subject nexus was not enough to satisfy the constitutional germaneness test.

The County argues that Act 44's authorization to levy a drink tax to financially support transit systems is germane to Act 44's overarching purpose of addressing statewide transportation concerns. The trial court agreed on this point.

A careful review of *PAGE* convinces us that it does not support the result Plaintiffs/Appellants seek. The pertinent portion of *PAGE* dealt with a specialized aspect of Article III, Section 3 jurisprudence, namely, the General Assembly's creation and treatment of special funds generated ancillary to substantive legislation. *PAGE*, 583 Pa. at 298, 877 A.2d at

397. In evaluating whether one enactment which both authorized acquisition of a special fund and authorized disposal of the fund survived the "single subject" challenge, the Court focused on the use of the monies collected.

More particularly, the *PAGE* Court gave special attention to an august case, *Commonwealth ex rel. Bell v. Powell*, 249 Pa. 144, 94 A. 746 (1915) (automobile registration and license fees earmarked for fund to assist in construction and repair of highways; disposition of monies germane to single subject of enactment). The *PAGE* Court noted that in the older case the focus was on the *use* of the monies from the special fund. *PAGE*, 583 Pa. at 299–300, 877 A.2d at 397–98. The *PAGE* Court concluded:

> *Powell's* reasoning thus supports the notion that, to withstand single-subject challenge the *designation or use of the monies collected* under a statute must also be germane to the overall subject of the statute if the legislature is going to disburse funds through a single statutory enactment.... Rather, the broader relationship between the overarching subject of the legislation and the *purpose to which the special funds that it created were devoted* served independently to insulate the statute from single-subject attack in *Powell*.

*Id.* at 300–01, 877 A.2d at 398 (footnote omitted, emphasis added). Ultimately, the *PAGE* Court reaffirmed the reasoning of *Powell* with respect to special funds treatment in substantive legislation entailing actual authorization of monetary disbursements. *Id.* at 303, 877 A.2d at 400.

Here, the *use* of the money raised by the Act 44–enabled Drink Tax is unquestionably germane to the overarching subject of that enactment, transportation. Pursuant to the statute, a drink tax is to be used "to obtain financial support for transit systems...." 53 Pa.C.S. § 8602(a). Similarly, the Drink Tax ordinance recites this statutory limitation and recites the Port Authority of Allegheny County's budgetary shortfall that threatens the Authority's ability to provide services. Ordinance No. 54–07–OR/3548–07. Pursuant to the ordinance, all revenues are placed in a restricted account. Allegheny County Code § 5–808.A.05(E).

Given the clear language of the Supreme Court's analysis in *PAGE*, the strong presumption of constitutionality, and the failure of Plaintiffs/Appellants to reference any other authority to support a "single subject" challenge based solely on the source of the special fund,[5] we cannot conclude that Act 44 of 2007 is unconstitutional on this basis. Consequently, we hold that the trial court did not err when it sustained the County's preliminary objection.

### C. Uniformity/Equal Protection

The Uniformity Clause of the Pennsylvania Constitution provides that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

---

**5.** *Pennsylvanians Against Gambling Expansion Fund, Inc. v. Commonwealth*, 583 Pa. 275, 292, 877 A.2d 383, 393 (2005) (*PAGE*) dealt with a situation where the *source* of the special fund was related to the unifying subject of the legislation, gaming. The problem in *PAGE* was the *use* to which the funds were devoted, which in some circumstances was not related to gaming.

In this case, we confront the reverse. Thus, the *use* of the revenue is obviously related to the unifying subject of the legislation, transportation. However, Plaintiffs/Appellants challenge the germaneness of the *source* of the special fund.

PA. CONST. art. VIII, § 1. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1.

 When considering the reasonableness of classifications made for the purposes of taxation, the Uniformity Clause of the PA Constitution and the Equal Protection Clause of the U.S. Constitution stand in *pari materia*. *Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988). Both the federal equal protection clause, as applied to taxing statutes, and the state constitutional requirement of uniformity of taxation upon the same class of subjects mandate that classification in a taxing scheme have a rational basis. *Id.* In either case, a classification for tax purposes is valid when it is based upon some legitimate distinction between the classes that provides a non-arbitrary and reasonable and just basis for the different treatment. *Id.* Where there exists no legitimate distinction between the classes, and thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional. *Id.*

 Plaintiffs/Appellants argue that the Drink Tax is illegal because it discriminates in favor of certain licensees, namely beer distributors and brewers, and against other licensed establishments such as restaurants, hotels, and caterers. Also, the Drink Tax is illegal because it imposes a tax on one industry for the benefit of an entirely different sector, namely public transportation. Citing *CRH Catering Co., Inc. v. Commonwealth*, 104 Pa.Cmwlth. 91, 521 A.2d 497 (1987), Plaintiffs/Appellants argue that a tax that is applied to different entities disproportionately on identical products is unconstitutional. Plaintiffs/Appellants note that all licensees in this case are authorized to sell a 5-liter mini-keg and a 24-unit case of seven ounce bottles, both of which are consumed off premises, yet only sales at their establishments would be subject to the Drink Tax.

Plaintiffs/Appellants also rely on *Allegheny County v. Monzo*, 509 Pa. 26, 500 A.2d 1096 (1985), for support of its argument that the Drink Tax improperly expropriates money from one sector for the limited and exclusive benefit of another. In *Monzo*, the owner of a hotel located in a municipality of Allegheny County challenged the constitutionality of a hotel room tax enacted for purpose of funding a convention center in downtown Pittsburgh. The facts there, however, established that the imposition of the tax actually caused hotels located outside the downtown Pittsburgh area to lose patrons and to finance their competitors in Pittsburgh. In affirming the trial court's determination that the Allegheny County tax was unconstitutional, the Supreme Court noted that "[a]n examination of the incidence of this tax and its effects establishes that a substantial portion (perhaps a majority) of the class taxed are [sic] afforded no benefits whatsoever, while being significantly burdened." *Monzo*, 509 Pa. at 42, 500 A.2d at 1104.

The County contends that the Drink Tax Ordinance does not violate the uniformity or equal protection clauses. It indicates that absolute equality or perfect uniformity is not necessary. The County asserts that the Ordinance is rationally related to a legitimate government purpose, funding for public transportation.

The County notes that the Supreme Court in *Leventhal* asked whether "the taxing power exerted by the state bears a fiscal relation to protection, opportunities, and benefits given by the state[?]" *Id.* at 240, 523 A.2d at 1332 (citations omitted).

Here, the County answers that question in the affirmative, as it provides critical public transportation for the sole benefit of the public. The County also contends that state liquor stores and beer distributors essentially are in a distinct class from those subject to the Drink Tax and that this distinction obviates the need to be treated uniformity or equally. The County references the distinctions noted by the trial court relating to sales and use tax and the method of merchandising as reasonable bases justifying different treatment.

The County distinguishes *Monzo*, stating that unlike the hotel tax in that case, the Drink Tax is intended for a broad public purpose, the financing of public transportation for all residents of Allegheny County. Even if the Drink Tax is a "special tax" within the meaning of *Monzo*, Plaintiffs/Appellants failed to make any showing that they received no benefit from the tax.

In its initial opinion in support of the grant of summary judgment in favor of the County, the trial court addressed the uniformity/equal protection challenge. The trial court correctly noted that the test for determining the validity of a tax classification is whether the classification is based upon some legitimate distinction between the classes that provides a non-arbitrary and reasonable basis for the difference in treatment. The trial court indicated that the General Assembly's intent to distinguish between liquor licensed restaurants

and state stores and distributors can be found in the complex interplay of various state statutes.

In particular, the trial court cited Act 44 of 2007, 53 Pa.C.S. § 8602(b), which mandates that an ordinance imposing a drink tax "shall" be modeled after act known as the First Class School District Liquor Sales Tax Act of 1971. This model act specifically excludes from taxation any transaction that is taxed under the Tax Reform Code of 1971 (Tax Code).[6] The trial court noted that transactions in state stores and at distributors are taxed under the Tax Code; therefore, such transactions are not subject to the First Class School District Liquor Sales Tax Act of 1971 or the Drink Tax.[7] Because the two classes are taxed under different statutory regimes, the trial court concluded that the County had a legitimate and rational basis for the different treatment with regard to the Drink Tax.

Also, the trial court cited the vast difference in the method of merchandising between liquor-licensed restaurants and state stores and distributors as another legitimate and reasonable distinction which provides a just basis for different tax treatment. Discussing *CRH Catering*, the trial court concluded the case supported such a distinction.

The trial court also distinguished this case from *Monzo*, relied upon by Plaintiffs/Appellants. The trial court noted, un-

---

6. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 7101–10004. Specifically, the trial court quoted Section 2(4) of the First Class School District Liquor Sales Tax Act of 1971, 53 P.S. § 16132(4) (excluding from the definition of "Sale at retail" any transaction which is subject to tax under Article II of the Tax Code).

7. The trial court also quoted Section 201 of the Tax Code, 72 P.S. § 7201 (excluding from the definition of "Sale at retail" sales of malt

or brewed beverages by a "retail dispenser" and sales of alcoholic beverages by a person holding a "retail liquor license" under the Liquor Code).

Further, the trial court quoted Section 102 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 1–102 (defining "retail dispenser"). The purpose of these statutory quotes was to demonstrate that restaurant liquor licensees, such as Plaintiffs/Appellants, are not taxed under the Tax Code.

like in *Monzo*, Plaintiffs/Appellants here failed to produce any evidence that they lost customers to distributors or state stores, that they lost revenue, or that alcohol sales are even a substantial percentage of their revenues.

Having closely reviewed the trial court's discussion of the tax regime and merchandising bases for distinguishing between the classes, we discern no error in the trial court's analysis. Accordingly, we reject Plaintiffs/Appellants' uniformity and equal protection challenges to the Drink Tax.

### D. County Ethics Code

The County Ethics Code requires that a County Council member abstain from voting in the event of a conflict of interest. Whether a conflict of interest existed in the present case depends on whether Dr. Charles Martoni used "the authority of his office . . . for the benefit of . . . a business or organization with which he . . . is associated." County Ethics Code, § 5–1013.01.

We need not decide, however, whether a conflict of interest existed under the County Ethics Code. This is because the remedies for such a violation do not include judicial avoidance of the vote; rather, other specific penalties are prescribed for violation of the County Ethics Code.

The County Ethics Code establishes an Accountability, Conduct and Ethics Commission (ACE Commission). *Id.* at § 5–1013.10. The County Ethics Code also establishes a procedure through which complaints for violations shall be adjudicated by the ACE Commission. *Id.* at §§ 5–1013.22–.27. The Code details the final action which can be recommended by the ACE Commission upon a finding of violation. *Id.* at § 5–1013.28. The penalties include referral of the matter for criminal prosecution, admonition, censure, suspension, expulsion/dismissal, and removal. *Id.*

Avoidance of a vote is not among the penalties that can be recommended by the ACE Commission. *Id.*

Disposition of sanctions or penalties shall be made by the County Council, Chief Executive, or appropriate elected County official. *Id.* at § 5–1013.29. This provision does not enlarge the penalties available, and it does not reference avoidance of a vote.

Appeal may be had from a disposition to the trial court. *Id.* at § 5–1013.30. The appeal provision, however, does not enlarge the penalties available, and it does not reference avoidance of a vote.

Plaintiffs/Appellants argue that a vote cast by one who has a conflict of interest in the matter being voted upon is a nullity. They cite *Meixell v. Borough Council of Borough of Hellertown, Northampton County, Pa.*, 370 Pa. 420, 88 A.2d 594 (1952). In that case, two borough councilmen who wanted to be elected interim mayor (at a higher level of compensation) voted for themselves. Relying on public policy to determine that the two votes were nullities, the Supreme Court stated, "'[A] councilman is disqualified from voting in any matter or proceedings where he has a direct, personal or pecuniary interest.'" *Id.* at 422, 88 A.2d at 595 (quoting *Genkinger v. City of New Castle*, 368 Pa. 547, 552, 84 A.2d 303, 306 (1951)) (emphasis deleted).

*Meixell* can be distinguished on both factual and legal grounds. Factually, the borough councilmen in *Meixell* had discrete pecuniary interests in the higher compensation of the new office at stake. In the present case however, Dr. Martoni did not. Notes of Testimony, Deposition of Charles John Martoni, 3/9/09, at 8; Reproduced Record at 107a. Any conflicting interest on his part arose from his position as a director of the Allegheny County Port Authority.

Legally, the administrative framework in the present case is much different. Here, there is an extensive written Ethics Code. Notably, the County Ethics Code broadens its reach beyond similar enactments in that it does not require proof of personal financial or pecuniary gain. Also, the County Ethics Code contains detailed provisions for enforcement. None of these provisions, however, authorize the remedy Plaintiffs/Appellants seek.

We conclude this case is controlled by more recent authority from this Court upon which the County and the trial court relied. In *Salem Township Municipal Authority v. Township of Salem,* 820 A.2d 888 (Pa.Cmwlth.2003), we addressed an asserted conflict of interest and remedy under the Public Official and Employee Ethics Act (State Ethics Act).[8] Like the County Ethics Code here, the State Ethics Act requires a public official to abstain from voting in the case of a conflict of interest. 65 Pa.C.S. § 1103(j) (addressing voting conflict). Also like the County Ethics Act here, the State Ethics Act provides specific sanctions for violations; however, the voiding of votes is not among those express sanctions. 65 Pa.C.S. § 1109. Under these circumstances, we concluded that under the doctrine of *expressio unius est exclusio alterius,* the General Assembly did not intend voiding of votes to be an unstated remedy. *Salem Twp.,* 820 A.2d at 894 n. 17. We reach the same conclusion here. *See also Yaracs v. Summit Academy,* 845 A.2d 203 (Pa.Cmwlth.2004) (same).

### IV. Conclusion

In sum, we reject the challenges to the Drink Tax. Accordingly, we affirm.

Judge McCULLOUGH did not participate in the decision in this case.

8. 65 Pa.C.S. §§ 1101–1113.

### ORDER

**AND NOW,** this 8th day of February, 2012, the Order of July 30, 2008 (preliminary objections), and the Order filed March 8, 2011 (summary judgment entered for Allegheny County), are **AFFIRMED.**