696 A.2d 1141

Appeal of Thomas TORBIK, t/d/b/a Wilkes–Barre Inn; Ken Pollock, t/d/b/a Intercoastal Management, Inc.; Brian Maloney, t/d/b/a Dunmore Airport Associates, L.P., Appellees.

GUS GENETTI HOTEL & RESTAURANT, INC., d/b/a Best Western Genetti Motor Lodge, and West Hazleton Associates LP d/b/a Comfort Inn, Appellants,

v.

LUZERNE COUNTY, Luzerne County Board of Commissioners, Frank P. Crossin; Joseph Jones; and Thomas Makowski, in their capacity as Luzerne County Board of Commissioners, and Luzerne County Convention Center Authority, Appellees.

Supreme Court of Pennsylvania.

Submitted March 19, 1997.

Decided April 11, 1997.

Opinion Supporting Decision
June 17, 1997.

[redacted]

Barbara W. Mather, Philadelphia, Brian P. Downey, Harrisburg, Anthony B. Panaway, Richard M. Goldberg, Solicitor–Luzerne County, John P. Moses, Wilkes Barre, and John B. Dougherty, East Petersburg, for Luzerne County, et al.

John C. Aciukewicz, Wilkes Barre, for Luzerne County and Luzerne County Board of Commissioners.

Joseph M. Cosgrove, Forty Fort, for Torbik, et al.

Stephen A. More, Elizabeth A. Dougherty, Helen L. Gemmill, Harrisburg, for Gus Genetti Hotel, et al.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

234

## ORDER

PER CURIAM.

AND NOW, this 11th day of April, 1997, the Order of the Court of Common Pleas of Luzerne County dated June 28, 1996 is affirmed. Opinion to follow.

## OPINION

NEWMAN, Justice.

This Opinion is written in support of our Order dated April 11, 1997 in which we affirmed the decision of the Court of Common Pleas of Luzerne County (trial court), which held that the Third Class County Convention Center Authority Act (Act), 16 P.S. § 13101, *et seq.*, and specifically, the Hotel Room Tax, Section 23 of the Act, 16 P.S. § 13123, as well as Luzerne County Ordinance 052296, are constitutional.

The Commissioners of Luzerne County, on September 7, 1994, authorized the formation of the Luzerne County Convention Center Authority ("Authority"). The Authority intends to build the Northeast Pennsylvania Civic Arena and Convention Center in Wilkes–Barre, a facility with 42,000 square feet of arena floor and 18,000 square feet of conference and convention center rooms.

On December 27, 1994, the Pennsylvania legislature adopted the Act, which provides for creation of authorities for the purpose of owning and operating convention centers. The Act also recognizes that certain counties may have already had convention center authorities as of December 27, 1994. Section 2(c)(3), 16 P.S. § 13102(c)(3), states that the only provision of the Act that applies to such counties is Section 23, 16 P.S. § 13123, which provides that the county in which a convention center is located may impose a hotel room rental tax not to exceed 5 per cent. Pursuant to this statute, the Luzerne County Board of Commissioners enacted an Ordinance on May 22, 1996, imposing a 5 per cent tax on all hotel rooms in Luzerne County.

Two days later, on May 24, 1996, Thomas Torbik, t/d/b/a Wilkes–Barre Inn, Ken Pollack, t/d/b/a Intercoastal Manage-

ment, Inc., and Brian Maloney, t/d/b/a Dunmore Airport Associates, LP (the Torbik Plaintiffs), filed a complaint in the trial court seeking a determination of the constitutionality of the Ordinance. The Torbik Plaintiffs own and operate hotels in three different portions of Luzerne County: Wilkes–Barre, Dupont and West Hazleton.

Gus Genetti Hotel & Restaurant, Inc. d/b/a Best Western Genetti Motor Lodge, and West Hazleton Associates, L.P., d/b/a Comfort Inn (the Genetti Plaintiffs) filed a separate action on May 30, 1996, seeking a declaration that the Ordinance and the Act were unconstitutional. They also sought to intervene in the action brought by the Torbik Plaintiffs. On May 31, 1996, the trial court consolidated the actions.

The trial court held hearings on June 21, 1996 and June 24, 1996. Eight fact witnesses testified, including representatives of hotels, and four expert witnesses. The court issued an Order on June 28, 1996 holding that (1) the Act and the Ordinance were constitutional; (2) the Authority was properly incorporated and legally entitled to construct and operate a convention center; and (3) the proposed center meets the criteria of a convention center as set forth in the Act.

The Genetti Plaintiffs filed motions for post-trial relief, which the trial court denied on September 23, 1996. They filed a timely notice of appeal to the Commonwealth Court on October 18, 1996.[1] However, because the Commonwealth Court did not issue a briefing or argument schedule, the County Defendants and the Torbik Plaintiffs filed an Application for Extraordinary Jurisdiction with this Court on November 8, 1996. The Application contains the following averments:

5. Construction of the Convention Center will be financed, in part, by a $19.2 million grant given by the Commonwealth of Pennsylvania on July 1, 1994. This grant will

---

1. The Torbik Plaintiffs did not appeal the trial court's decision. In their brief to this Court, the Torbik Plaintiffs state that they accept the trial court's findings of fact and conclusions of law, and that they support the position expressed by the County Defendants.

expire if the County Defendants are unable to utilize it to begin construction of the Convention Center.

6. Construction of the Convention Center also will be financed, in part, by the issuance of a series of bonds by the Authority. The revenue generated by the tax will finance debt service on the bonds. The bonds cannot be issued if these constitutional questions are not resolved immediately.

7. Construction on the Convention Center cannot begin until the insurance and the bonds are issued and construction will take 18 months to complete. Therefore, the 18–month construction process cannot begin until *after* the constitutional questions are resolved.

8. The economic viability of the Convention Center is premised, in part, on the presence of an anchor tenant, an American Hockey League Franchise team, which requires that the Convention Center be completed by Autumn, 1998. If the Convention Center is not completed by that date, the anchor tenant, and, therefore, the Convention Center, will be lost. The economic viability of the entire Convention Center project is dependent upon a final resolution of the constitutional issues by this Court at the earliest possible date.

Application for Extraordinary Jurisdiction, November 8, 1996 at 2 –3. We granted the request for Extraordinary Jurisdiction on January 14, 1997.

On appeal, the Genetti Plaintiffs raise the following six issues:

1. Whether the trial court erred in finding that the Third–Class County Convention Center Authority Act, 16 P.S. § 13101 *et seq.* and the hotel tax ordinance enacted by Luzerne County pursuant to it, did not violate the due process and equal protection clauses of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution.

2. Whether the trial court erred in finding that the Third–Class County Convention Center Authority Act, 16 P.S.

§ 13101 *et seq.* did not constitute special legislation in violation of the Pennsylvania Constitution.

3. Whether the trial court erred in finding that construction and/or operation of a convention center in Luzerne County did not violate the Municipality Authorities Act of 1945, 53 P.S. § 301 *et seq.*, since it will compete in part with existing enterprises in the area.

4. Whether the trial court erred in finding that the Luzerne County Convention Center Authority, was an existing authority, as defined in the Act, incorporated for the purpose of operating a convention center.

5. Whether the trial court erred in finding that the facility to be constructed in Luzerne County constitutes a convention center as defined by the Act.

6. Whether the trial court erred in finding that the Luzerne County Convention Center Authority possesses the power under the Municipality Authorities Act to construct or operate an arena.

This court has twice had the opportunity to consider the constitutionality of a hotel room rental tax. On December 27, 1977, Allegheny County enacted a 1 per cent tax on hotel rooms for the purpose of funding a convention center in downtown Pittsburgh pursuant to Section 4970.2 of the Second Class County Code, 16 P.S. § 4970.2. In *Allegheny County v. Monzo,* 509 Pa. 26, 500 A.2d 1096 (1985), the owner of a hotel located in the Borough of Monroeville, an Allegheny County municipality fifteen miles from downtown Pittsburgh, and close to Westmoreland County, challenged the constitutionality of the tax. The trial court found that the imposition of the tax caused hotels outside Pittsburgh to finance their competitors in Pittsburgh, and that the convention center actually took patrons away from hotels outside the city. The trial court declared the statute and ordinance invalid under the Fourteenth Amendment to the United States Constitution and Article VIII, Section 1 of the Pennsylvania Constitution. This Court affirmed, noting that "[a]n examination of the incidence of this tax and its effects establishes that a substantial portion (perhaps a majority) of the class taxed are afforded no bene-

238

fits whatsoever, while being significantly burdened." *Id.* at 42, 500 A.2d at 1104.

On October 24, 1986, the City of Philadelphia enacted a hotel room tax to support construction of a convention center pursuant to the Pennsylvania Convention Center Authority Act, 53 P.S. § 16201, *et seq.* In *Leventhal v. City of Philadelphia,* 518 Pa. 233, 542 A.2d 1328 (1988), the owner of a hotel located approximately seven miles from Center City Philadelphia, near Philadelphia International Airport, challenged the constitutionality of the tax. The trial court distinguished the case from *Monzo,* noting that the hotel owner failed to establish that the tax or the convention center would harm its business. We affirmed the trial court.

The legislature has wide discretion in the exercise of its taxing power. *Aldine Apartments v. Commonwealth,* 493 Pa. 480, 426 A.2d 1118 (1981). Tax enactments are presumed to be constitutionally valid, and parties challenging them have the burden of establishing their invalidity. *Leventhal.* The Genetti Plaintiffs' equal protection and uniformity clause claims are evaluated according to the same legal standard. *Leonard v. Thornburgh,* 507 Pa. 317, 489 A.2d 1349 (1985); *Hahn v. United States,* 757 F.2d 581, 593 (3d Cir.1985) As this court stated in *Leventhal,* at 239, 542 A.2d at 1331 (1988):

Both the federal equal protection clause, as applied to taxing statutes, and the state constitutional requirement of uniformity of taxation (Pa. Const.Art. VIII, § 1) mandate that classification in a taxing scheme have a rational basis. In either case, a classification for tax purposes is valid when it 'is based upon some legitimate distinction between the classes that provides a non-arbitrary and reasonable and just basis for the different treatment.' (Citations omitted.)

The Genetti Plaintiffs' due process claim is based on the question of "whether the taxing power exerted by the state bears a fiscal relation to protection, opportunities and benefits given by the state." *Monzo,* 509 Pa. at 38, 500 A.2d at 1102, *quoting Wisconsin v. J.C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 250, 85 L.Ed. 267 (1940).

■ To prevail on their constitutional claims, the Genetti Plaintiffs must prove that the tax "clearly, palpably and plainly violates the Constitution." *Leonard*, 507 Pa. at 321, 489 A.2d at 1351–1352. Any uncertainty must be resolved in favor of the validity of the statute. *Lyles v. City of Philadelphia*, 88 Pa. Commw. 509, 490 A.2d 936 (1985), *aff'd sub nom. Lyles v. Commonwealth of Pennsylvania, Department of Transportation*, 512 Pa. 322, 516 A.2d 701 (1986).

■ At the hearing before the trial court, the Genetti Plaintiffs argued that because their hotels are located twenty-four and twenty-one miles from the site of the Convention Center, they would not benefit from the facility. Also, they maintained that if the hotels in any area other than Wilkes-Barre were to benefit from the Convention Center, it would be the hotels in Scranton, Lackawanna County, and not those in other parts of Luzerne County.

In its Opinion, the trial court made the following findings of fact:

28. Hotels within Luzerne County will benefit from events held at the convention center.

. . .

31. All hotel owners in Luzerne County will benefit from the construction of the convention center.

32. The credible evidence establishes that the convention center will generate in excess of thirty thousand (30,000) new room rentals within Luzerne County.

33. The credible evidence establishes that activities at the Center will attract patrons to hotels located throughout Luzerne County and all hotels in Luzerne County will benefit as a result of the activities at the convention center.

. . .

35. Plaintiffs Genetti and Comfort Inn will not suffer any business loss as a result of the imposition of the tax and the construction of the convention center at the location chosen.

. . .

39. The evidence established that any increase in cost to the Luzerne County hotels as a result of the imposition of the tax will not affect the demand for the hotel rooms. 40. The evidence established that the experience of the Luzerne County hoteliers has been that increases in the price of hotel rooms does not reduce the demand for these rooms.

Trial Court Opinion at 6–7. Review of the notes of testimony and the extensive exhibits submitted at trial indicate that the findings of fact are supported by evidence in the record. As this Court stated in *Monzo,* 509 Pa. at 35, 500 A.2d at 1101 (1985):

It is within the province of the trial judge, sitting without a jury, to judge the credibility of the witnesses and to weigh their testimony. On appeal, it is not the duty of the appellate court to find the facts, but to determine whether there is evidence in the record to justify the trial court's findings of fact. *Lawner v. Engelbach,* 433 Pa. 311, 249 A.2d 295 (1969). This Court is bound by the trial judge's findings unless those findings are not based on competent evidence. *2401 Penn. Ave. v. Fed. of Jewish Agencies,* 507 Pa. 166, 489 A.2d 733 (1985).

Because the evidence supports the trial court's findings that the Genetti Plaintiffs (1) will not be harmed by the tax; and (2) will benefit from the Convention Center, we are bound by those findings. Therefore, the Genetti Plaintiffs have clearly not carried their burden of establishing the unconstitutionality of the Act or the Hotel Room Tax.

 In Section 102(b) of the Act, 16 P.S. § 13102(b), the legislature made a public policy decision that the Convention Center will provide benefits to the local and state economy. The distribution of the benefit from the Convention Center to hotels throughout the County, satisfies the requirement that the taxing scheme have a rational basis "having a fair and substantial relation to the object of the legislation." *Monzo* at 37, 500 A.2d at 1101. Accordingly, the Act and the Luzerne

County Hotel Room Tax Ordinance do not violate due process and equal protection clauses of the United States Constitution or the uniformity clause of the Pennsylvania Constitution.

■ The Genetti Plaintiffs also argue that the Act violates Article III, Section 32 of the Pennsylvania Constitution, which provides that the General Assembly shall pass no local or special law in any case which has been or can be provided for by general law. In *Heuchert v. State Harness Racing Commission*, 403 Pa. 440, 446–447, 170 A.2d 332, 336 (1961), this Court stated:

> In general, a special law is the opposite of a general law. A special law is not uniform throughout the state or applied to a class. A general law is. It is well known that the Legislature has classified cities and counties. A law dealing with all cities or all counties of the same class is not a special law, but a general law, uniform in its application. But a law dealing with but one county of a class consisting of ten, would be local or special.

The Genetti Plaintiffs note that Section 23 of the Act, which provides for the Hotel Room Rental Tax, specifically defines "convention center," for purposes of that section as "[a]ny land, improvement, structure, building, or part thereof, or property interest therein, whether owned by or leased by or to or otherwise acquired by an existing authority...." They then look to Section 3 of the Act, 16 P.S. § 13103 (Definitions), which defines "existing authority" as "[a]n authority incorporated by a county of the third class prior to November 1, 1994, pursuant to the act of May 2, 1945 (P.L. 382, No. 164), known as the Municipality Authorities Act of 1945, for the principal purpose of owning or operating a convention center." The Genetti Plaintiffs conclude that only third class counties that incorporated an authority to own or operate a convention center before November 1, 1994 can impose a room tax. Because Luzerne County is the only third class county that had an "existing authority," they argue that of the eleven third class counties, Luzerne alone is authorized to impose the tax, and accordingly, Section 23 of the Act is special legislation.

As its title suggests, the main purpose of the Act is to provide for the creation of third class county convention authorities and to delineate their power. This is provided for by Sections 4 through 22, 16 P.S. 13104—13122. Section 2(c)(3), 16 P.S. 13102(c)(3) provides that "[n]o provision of this act other than section 23 [Hotel Room Rental Tax] shall apply to an existing authority." [2] Section 2(c)(3) clearly indicates that the Hotel Room Rental tax applies to existing authorities in addition to authorities created under the Act.

Furthermore, the structure of Section 23 indicates that it applies to all third class counties, and not just to Luzerne County. Section 23(a) provides that the county in which a convention center is located is authorized to impose a hotel room tax within the market area. Section 23(j) defines the term "market area" differently depending on whether there is more than one city of the third class in the county. By providing different taxing authority to different types of third class counties, it is clear that the hotel room tax provision applies to more than one county. Otherwise, the definition of "market area" would have been unnecessary.

We also note that Section 5(b)(10), 16 P.S. § 13105(b)(10), specifically provides that an authority created under the Act has the power to "make and issue negotiable bonds of the authority, secure payment of the bonds, or any part thereof, by pledge or deed of trust of all or any of its revenues (including any hotel room rental tax)...." This statutory provision indicates that authorities created pursuant to the Act, as well as those existing before December 27, 1994, are authorized to impose a hotel room rental tax Section 23.

The trial court held that the legislative findings set forth in Section 2 of the Act, 16 P.S. § 13102, indicate that the Act applies to all third class counties.[3] This construction avoids a

2. Accordingly, a county that already had an existing convention center authority was not required to create a new one in order to benefit from the Act.

3. Section 2 of the Act, 16 P.S. § 13102, states in part:
 (a) Legislative findings.—It is hereby determined and declared as a matter of legislative finding:

result that is "absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1). It also gives meaning to all the provisions of the Act, instead of just the provision of Section 23 related to an existing authority. We agree with the sound interpretation of the trial court, and therefore affirm its conclusion that Section 23 is not special legislation.

■ The Genetti Plaintiffs next argue that the Authority is prohibited from operating the Convention Center because the Arena in Wilkes–Barre, the Genetti Convention Center in Wilkes–Barre (unrelated to the Genetti Plaintiffs) and the Lackawanna County Stadium in Scranton already provide the same services. Pursuant to Section 306(A)(b)(2) of the Municipality Authorities Act of 1945, 53 P.S. 306(A)(b)(2), an authority may not be involved in a project "which in whole or in part shall duplicate or compete with existing enterprises serving substantially the same purposes."

Upon consideration of the expert testimony presented at the hearing, the trial court made the following finding:

It is inconceivable to this Judge that these facilities are even arguably enterprises in the market areas which would substantially serve the same purposes as the proposed convention center. Plaintiff Genetti would have this Court believe any facility that could hold a substantial number of people would be a facility which could be used for the same purposes as the convention center. This position is flawed and cannot be logically supported upon the evidence presented at the time of hearing. The facilities used by Plaintiff Genetti to substantiate its position are inadequate and fall woefully short of the types of facilities that conventioniers [sic] and promoters would need to hold conventions

. . .

(3) The development of convention centers is appropriate within the Redevelopment Assistance Eligible Area of a third class county. . . .

. . .

(8) That, to promote the development of convention centers within this Commonwealth, it is necessary to provide additional and flexible means of developing, constructing, designing, managing, financing and operating convention centers.

and/or other events similar to those contemplated for the convention center. Trial Court Opinion at 14.

Our review of the record in this case indicates that the trial court's finding that the Convention Center differs significantly from the existing facilities is supported by competent evidence. Therefore, we are bound by this finding, *Monzo*, and hold that the trial court did not err in concluding that construction of the Convention Center does not violate the Municipality Authorities Act of 1945.

■ The Genetti Plaintiffs next maintain that the Authority was not validly created under the Municipality Authorities Act of 1945 because operation of a convention center is not one of the types of projects that an Authority is permitted to support. Section 306(A)(a) provides in relevant part:

(a) The Authority shall be for the purpose of financing working capital and of acquiring, holding, constructing ... and operating ... projects of the kind and character described in the following subclauses....

(2) buildings to be devoted wholly or partially for public uses, including public school buildings, and for the conduct of judicial proceedings, and for revenue producing purposes;

. . .

(4) parks, recreation grounds and facilities;

53 P.S. § 306(A)(a). The Genetti Plaintiffs are not convincing in their argument that a convention center is neither a public building nor a recreation facility. We agree with the trial court that "[t]o argue that the construction of the convention center and the holding of events at the convention center falls outside the powers that may be exercised by the Authority defies a logical meaning of the Act...." Trial Court Opinion at 15. A building designed to house consumer and industrial trade shows, conventions and conferences, as well as professional and amateur athletic events is both a public building and a recreation facility.

■ The Genetti Plaintiffs further assert that the Convention Center does not meet the definition of a such a facility set forth in Section 23(j) of the Act:

"Convention center." Any land, improvement, structure, building, or part thereof, or property interest therein, whether owned by or leased by or to or otherwise acquired by an existing authority, appropriate for any of the following: large public assemblies, the holding of conferences, conventions, trade exhibitions and other business, social, cultural, scientific and public interest events. . . .

16 P.S. § 13123. At the hearing, Robert Canton, an analyst with Price Waterhouse, testified on behalf of the Genetti Plaintiffs that the proposed facility is an arena rather than a convention center. He testified that the primary focus of an arena is on spectator events such as professional sports and concerts, with most of the patrons being from the local market area. However, the emphasis of a convention center is on exhibition halls and conference rooms, with most of the conventioneers coming from outside the community. Reproduced Record at 138a—141a. Although the Convention Center has 18,000 square feet of space available for events other than sports, Mr. Canton maintained that he would still classify the facility as an arena. R.R. at 142a. However, on cross-examination, Mr. Canton testified that his opinion was not based on the definition of a "convention center" as set forth in the Act. R.R. 147a.

Mr. Canton testified that a facility can be both an arena and a convention center. R.R. 179a. Based on this assertion and testimony of other witnesses including Richard C. Wolffe, Jr., a senior manager of Deloitte & Touche, the trial court concluded that although the Convention Center will have a dedicated area for sporting events, it still meets the statutory definition of a "convention center." Because competent evidence supports the trial court's findings, we affirm its conclusion that the proposed facility is a convention center. *Monzo.*

■ The final issue raised by the Genetti Plaintiffs is that the Authority does not meet the definition for an "existing

authority" as set forth in Section 3 of the Act because it was not incorporated "for the purpose of owning or operating a convention center." 16 P.S. 13103. The Articles of Incorporation of the Luzerne County Convention Center Authority state:

> The purpose and projects of said Authority are as follows: to acquire, hold, construct, improve, maintain, operate, own and lease, either in the capacity of lesser [sic] or lessee, arenas, auditoriums, stadiums, exhibition halls, and other similar buildings for public recreation purposes in and for the County of Luzerne.

The Genetti's maintain that because the term "convention center" does not appear in the articles of incorporation, the Authority may not operate one. We agree with the trial court that the Genetti's reading of the articles of incorporation is overly restrictive. The term "auditoriums ... exhibition halls, and other similar buildings" is broad enough to encompass the definition of "convention center" set forth in Section 23(j) of the Act which includes "[a]ny ... building ... appropriate for any of the following: large public assemblies, the holding of conventions, conferences, trade exhibitions and other ... events." Because operating a convention center is subsumed under the terms of the articles of incorporation, the Authority is an "existing authority" for purposes of Section 3 of the Act.

We conclude that the hotel room rental tax provision of the Act, and the Luzerne County Ordinance promulgated pursuant to it are constitutional. We further conclude that the Luzerne County Convention Center Authority is properly incorporated, and the facility it is constructing does not offend the Municipality Authorities Act of 1945. For these reasons, we affirm the Order of the trial court.