801 A.2d 469

BOLD CORP., As Trustee for Masspa Realty Trust, t/d/b/a Lancaster Host Resort and Conference Center; Inn Management Services, Inc., t/d/b/a Eden Resort Inn and Conference Center; First DFI Partnership, L.P., t/d/b/a The Ramada Inn; Continental Inns of America, Inc., t/d/b/a Continental Inn; Historic Realty, Inc., t/d/b/a Historic Strasburg Inn; Family Time of Hershey Farm, Inc., t/d/b/a Hershey Farm Restaurant & Motor Inn; Dommel's Hotel Management, Inc., t/d/b/a Your Place Country Inn; Kim–Motel Corporation; t/d/b/a Quality Inn & Suites; Historic Revere Tavern & Motor Inn, Inc., t/d/b/a Best Western Revere; Pentidattilo Corporation, t/d/b/a Italian Villa Motel; and Ara Motel, Appellees,

v.

COUNTY OF LANCASTER, City of Lancaster and Lancaster County Convention Center Authority, Appellants.

Supreme Court of Pennsylvania.

Submitted May 28, 2002.

Decided July 16, 2002.

Joseph J. McAlee, Joseph R. Podraza, Philadelphia, Jeffry William Duffy, Reading, Christopher A. Stump, Richard A.

Sprague, Charles J. Hardy, Tyler Ewell Wren, Philadelphia, Daniel Boyd Huyett, Reading, Thomas A. Sprague, Philadelphia, for County of Lancaster, et al.

Adrian Renz King, Kenneth M. Jarin, Philadelphia, for PA League of Cities and Municipalities amicus curiae.

Robert M. Frankhouser, Lancaster, for School District of Lancaster amicus curiae.

George C. Werner, for Lancaster Chamber of Commerce & Industry, et al. amicus curiae.

Matthew James McLaughlin, for Erie Co. & Erie Co. Convention Ctr. Auth. amicus curiae.

Kathryn Lease Simpson, Pittsburgh, Charles B. Zwally, Daniel Lawrence Sullivan, Christopher C. Conner, Harrisburg, for Bold Corp., et al.

Before: ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### OPINION

Chief Justice ZAPPALA.

We granted allocatur in this matter to address the issue of whether the Third Class County Convention Center Authority Act (Act), 16 P.S. § 2399.1 *et seq.*, and more particularly, a hotel room tax imposed in Lancaster County pursuant to Section 2399.23 of the Act, is constitutional as applied to Appellants under both the United States and Pennsylvania Constitutions.

On December 27, 1994, the original Third Class County Convention Center Authority Act (1994 Act), 16 P.S. § 13010, *et seq.*, was promulgated for the purposes of promoting the development of convention centers to stimulate business, industry, commerce and tourism. Significant to the instant controversy, the 1994 Act precluded the building of a convention center where one already existed in the subject county. On November 3, 1999, a new Third Class County Convention Center Authority Act (1999 Act) was promulgated, effectively repealing the 1994 Act, for the stated purpose of consolidating

and clarifying existing law. The 1999 Act expressly states that it does not apply to a county which has an existing convention center owned or operated by an existing authority or the Commonwealth which covers an area of more than forty thousand square feet. 16 P.S. § 2399.2(c)(1). This amendment, referred to as the "Armstrong Amendment," made clear that the Act did not prohibit the building of a public convention center in a county where a private convention center already existed.

Prior to this amendment, the City of Lancaster (City) and County of Lancaster (County) jointly acted to create the Lancaster County Convention Center Authority (Authority). Additionally, the County enacted Ordinance No. 45 imposing a hotel room rental tax of 3.9% and Ordinance No. 46 imposing a hotel excise tax of 1.1%, both of which went into effect on January 1, 2000. Ordinance No. 45 provides that 80% of the revenues from the hotel room rental tax are to be used by the Authority to fund development, construction and operation of a convention center in downtown Lancaster and the remaining 20% is to be used by the Pennsylvania Dutch Convention and Visitors Bureau (Visitors Bureau) to promote Lancaster County tourism.[1]

The Authority hired PricewaterhouseCoopers to perform an independent analysis of the proposed convention center. Specifically, PricewaterhouseCoopers was asked to determine whether there was market demand for a convention center in downtown Lancaster, quantify any such demand and analyze the financial and economic impacts of the recommended facility. After completing its analysis, PricewaterhouseCoopers recommended to the Authority the construction of a conven-

1. Ordinance No. 46, which was passed pursuant to Section 1770.2 of the County Code, provides that 100% of the revenues from the hotel excise tax shall be distributed to the county tourism promotion agency and used for county-wide promotion of tourism. Prior to trial, the trial court dismissed any purported constitutional challenge to Ordinance No. 46, finding that Appellees had blurred the distinction between the two taxes and had not alleged any specific factual or legal basis for challenging the hotel excise tax.

tion center with 100,000 to 114,000 square feet of public space, including 70,000 to 84,000 square feet of rentable space.

The proposed project also includes the development of a 294 room first class hotel that will adjoin the convention center. At the time of trial, the evidence indicated that the convention center was to be financially independent from the proposed hotel, which was to be privately owned and financed. However, construction of both facilities is interdependent; the convention center will be built only if the adjacent hotel is built and the hotel will be built only if the convention center is built.

On March 24, 2000, Appellees, a group of eleven hoteliers from Lancaster County, filed a Complaint in Equity and Action for Declaratory Judgment against Appellants claiming that the hotel room rental tax violates their due process and equal protection rights.[2] A non-jury trial commenced on December 4, 2000, and concluded on December 11, 2000. On February 2, 2001, the trial court entered a decree nisi, concluding that the tax does not violate Appellees' due process or equal protection rights. On April 23, 2001, the trial court denied post-trial motions and entered the decree nisi as a final decree.

In rejecting Appellees' constitutional challenge, the trial court concluded that the hotels had failed to prove that the burdens imposed by the tax disproportionately outweighed the benefits that the tax would generate. The trial court explicitly found the evidence presented by Appellants to be more credible and a more accurate predictor of the future effects of the tax and the convention center project.

In its detailed findings of fact, which are supported by the record, the trial court found that occupancy rates in Lancaster

2. The Complaint also asserted a claim that the Armstrong Amendment constitutes impermissible special legislation passed solely for the benefit of Lancaster County, a claim that these legislative actions of the County constituted an abuse of discretion, and a federal civil rights action pursuant to 42 U.S.C. § 1983, alleging that the proposed convention center would diminish the value of and the revenues derived from its own center. Those claims were, however, dismissed after consideration of Appellants' preliminary objections and the case proceeded to trial on the due process and equal protection claims only.

County have decreased by 2.7% since January 1, 2000, the date the tax went into effect, but that room demand since January 1, 2000, had increased by approximately 1.5%. However, the court also found that the supply of hotel rooms in the County grew by 4.1% since 1999, and that occupancy rates had been on the decline since 1998. Additionally, the court found that the Lancaster County hotel market sold more rooms than ever through October 2000, at higher rates than ever, resulting in greater room revenues than in any prior year during the same time of year. A further finding was made that the County's average room rate, Rev Par (an industry standard statistic reflecting certain elements of profitability by combining occupancy and revenue), room demand, and overall room revenue were at a five-year high as of October 2000, as compared to the same period of months, January through October, from 1994 through 2000. Significantly, however, the trial court found that most of the hotels acknowledged that they had no evidence of losing any business directly as a result of the tax. Instead, they noted several other factors, such as increased competition in the market, massive road reconstruction, increased gasoline prices, and the failure of local attractions to change their programs from previous years, as having contributed to the loss in business. Findings of Fact, Nos. 37–48.

The trial court further found that Lancaster County currently has no state-of-the-art convention and meeting facilities and that the County has lost and will continue to lose business to competing destinations as a result. The court found that events held at the proposed convention center could reasonably be expected to generate 20,000 to 30,000 hotel room nights annually. Approximately 45% of those rooms are expected to be booked by the proposed new hotel, leaving 11,000 to 16,000 room nights per year to spill over to existing convention-quality hotels. Indeed, the court found that most of the hotels acknowledged that the proposed convention center and spillover from the adjoining hotel would result in additional room nights for the hotel market. Findings of Fact, Nos. 64, 67, 71, 73. The court further found that the

construction project itself will provide a one-time spending directly to the Lancaster County hotels of between $162,000 to $183,000 and that convention center operations will provide additional spending on those same hotels of $2,000,000 to $3,000,000 annually. The convention center was found likely to provide a revitalization to the economy and infrastructure of downtown Lancaster, making Lancaster County a more vibrant tourist destination and creating additional overnight tourist stays. Additionally, the trial court found that while construction of a new hotel would increase competition in an already competitive hotel market in Lancaster County, it could also generate new business for the County by drawing a class of clientele who might otherwise choose to stay elsewhere. Findings of Fact, Nos. 73–78.

The trial court also found that the expenditure of the additional revenues already had and will continue to result in substantial benefits for Lancaster County hotels. Most of the Appellee hotels and many of the hotels in the County are members of the Bureau and the Appellees generally acknowledged at trial that they receive a direct benefit from their membership in the Bureau. According to the trial court's findings, the portions of the revenues generated by the tax that is to go directly to the Bureau will more than double its marketing budget. As a result of the additional revenue already generated, the Bureau has been able to hire additional staff members and more aggressively market the County's tourism business. Further, the trial court found that the expenditure of these additional revenues, together with the new marketing strategies the tax allows for, will generate a 1% to 12% increase in annual demand for overnight stays in the County hotels, resulting in an increase of 16,000 to 187,000 room nights annually. Findings of Fact, Nos. 50–62.

On appeal to the Commonwealth Court, Appellees argued that the trial court had not conducted a proper benefit and burden analysis, particularly with respect to its conclusions that the increased competition that the new hotel may impose on the entire hotel market of the County was of no significance, and the trial court had failed to consider the tax as a

burden *per se* on the hotels. The Commonwealth Court agreed. More specifically, the court faulted the trial court for concluding that any potential increased competition resulting from the proposed new hotel was irrelevant and for not rendering any findings respecting when the proposed convention center would generate any revenue to those subject to the tax. Upon concluding that such findings were necessary to effectuate a proper benefit and burden analysis, the Commonwealth Court remanded the matter to the trial court with direction to make the necessary findings and to perform a proper benefit and burden analysis. Given its holding, the court declined to address the remaining issues raised by Appellees. Appellants then filed a Petition for Allowance of Appeal with our Court and also a Petition for Exercise of Plenary Jurisdiction alleging that they are operating under a construction deadline and that an expedited resolution of this matter is necessary so that the issuing of bonds may proceed. On April 23, 2002, this Court entered an order granting allowance of appeal and directing that the matter be submitted on briefs and an expedited briefing schedule established. We entered a second order that same date dismissing the Petition for Exercise of Plenary Jurisdiction as moot.

Appellants here argue that the trial court conducted a proper benefit and burden analysis by weighing the overall burdens and benefits caused by the tax and concluding that they were not palpably disproportionate. They argue that the Commonwealth Court's decision to the contrary is erroneous, particularly with respect to the court's conclusion that it is a "given" that the room tax is a burden on the hotels and its finding of fault with the trial court's failure to consider potential lost profits caused by the tax and the potential effect that increased competition from the new hotel may have on existing hotels. Appellants maintain that in so concluding, the Commonwealth Court exceeded its scope of review by not deferring to the trial court's amply supported findings that Appellees had not met their burden of establishing either lost profits or any other burden sufficient to render the tax constitutionally infirm. We agree that the Commonwealth

Court erred in remanding the matter for further findings of fact.

The legal principles governing our analysis of the claims asserted in this matter are well established. First, it is presumed that tax enactments are constitutionally valid and the burden of proving otherwise rests upon the party or parties challenging the tax. *Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988). While the Legislature, in the exercise of its taxing power, is subject to the requirements of the equal protection and uniformity clauses, it nevertheless is afforded wide discretion in matters of taxation. *Aldine Apartments v. Commonwealth*, 493 Pa. 480, 426 A.2d 1118 (1981). As this Court stated in *Leventhal:*

> Both the federal equal protection clause, as applied to taxing statutes, and the state constitutional requirement of uniformity of taxation "upon the same class of subjects" (Pa. Const. Art. VIII, § 1) mandate that classification in a taxing scheme have a rational basis. In either case, a classification for tax purposes is valid when it "is based upon some legitimate distinction between the classes that provides a non-arbitrary and 'reasonable and just' basis for the different treatment." Where there exists no legitimate distinction between the classes, and thus, the tax scheme imposes substantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional. The controlling standard for determining whether a tax is violative of the Due Process Clause of the Fourteenth Amendment "... is whether the taxing power exerted by the state bears a fiscal relation to protection, opportunities and benefits given by the state. The simple question is whether the state has given *anything* for which it can ask a return." Where the benefit received and the burden imposed is palpably disproportionate, a tax is not only a taking without due process under the Fourteenth Amendment to the United States Constitution, but also an arbitrary form of classification in violation of equal protection and state uniformity standards.

*Leventhal*, 542 A.2d at 1331–1332 (citations omitted); *See also, Torbik v. Luzerne County*, 548 Pa. 230, 696 A.2d 1141 (1997).

Upon review of the instant matter, we conclude that the trial court properly applied the above-recited principles in its analysis of the evidence presented and that the Commonwealth Court's conclusion to the contrary is premised upon a misreading of the trial court's findings and adjudication.

■ First, the Commonwealth Court's holding that the trial court did not conduct a proper benefit and burden analysis when it failed to consider the increased competition from the new hotel after having acknowledged the necessity of considering the hotel's potential impact on the existing hotels, is not only belied by the record, but also fails to consider the entire reasoning of the trial court on this issue.

In its Adjudication, the trial court explained its rejection of this proof, stating the following:

> While the Court feels that the convention center and adjoining hotel are linked for the purpose of the benefit/burden analysis, to the extent that the hotel absorbs or takes away any benefit that might be created by the proposed center, that is but capitalism at work. . . .

> The Court sympathizes with the plaintiffs to the extent that the market continually requires outselling your competition. However, this is the nature of capitalism and has nothing to do with the imposition of the tax itself. Thus, the extent to which a new hotel will create additional competition for the plaintiffs is irrelevant. . . .

Adjudication at 30–31. Seizing on the language of the trial court that such competition was nothing more than "capitalism at work," the Commonwealth Court held that because the competition from a privately funded hotel would not exist without the convention center, the increased competition that will arise from construction of this hotel is certainly a burden on the other hotels in the County. Based on that holding, the court directed that findings be made on remand as to how much money the existing hotels will lose annually to the new hotel.

Not only does this holding ignore the fact that it is Appellees' burden to establish such facts in the first instance, it also

ignores the trial court's further explanation of this issue set forth in its Opinion accompanying its Final Decree. There, the trial court stated:

The plaintiffs complain that the Court dismissed the general effect of the hotel portion of the project as merely capitalism at work. This, however, is not the Court's position, which was better articulated during the oral argument on this issue. The Court is satisfied that the connection between the convention center and the adjoining hotel is so *quid pro quo* that each must be considered in the benefit/burden analysis. However, the hotel is only relevant to the extent that it takes away any benefit from the plaintiffs that would be derived from the convention center. In other words, the convention center will not be built without the hotel, and vice-versa. If the hotel were to take any and all benefit from the convention center leaving nothing for the other Lancaster County hoteliers, that would appear to be a funding of competition in that a benefit would be created for one, through a tax on all. *See generally, Allegheny County v. Monzo*, 509 Pa. 26, 500 A.2d 1096 (1985). To the extent that there are room nights put back into the market above and beyond this absorption of the convention center business, *that* is merely capitalism at work. Even though the hotel will not come without the convention center, the hotel is not to be funded with public monies. Thus, the plaintiffs are not funding the hotel that will adjoin the proposed convention center. The added competition to the market as a whole is not a concern of the Court, and neither is it relevant to this issue, as the addition of rooms to the market is no different than if any private hotel were to be built in downtown Lancaster. The only relevant burden this hotel will have is the extent to which it takes away the benefits of the convention center from the other Lancaster County hotels.

Tr. Ct. op. at 11(emphasis in the original). Thus, contrary to what the Commonwealth Court implies, the trial court did, indeed, consider the impact of the new hotel, at least with respect to the extent that the new hotel would absorb a

portion of the new hotel business that would be generated by the convention center. As noted above, the court found that 45% of additional room nights that would be generated from the construction of the convention center would be absorbed by the new hotel. However, the trial court also found that the convention center events would benefit not only the proposed new hotel, but also a majority of the hotels in the County. Thus, the facts presented here are distinguishable from those presented in *Allegheny County v. Monzo,* 509 Pa. 26, 500 A.2d 1096 (1985), where we found a similar hotel tax unconstitutional.

In *Monzo,* the owner of a hotel located in Monroeville, a municipality of Allegheny County, challenged the constitutionality of a similar hotel room tax enacted for purpose of funding a convention center in downtown Pittsburgh. The facts there, however, established that the imposition of the tax actually caused hotels in Allegheny County that were located outside the downtown Pittsburgh area to lose patrons and to finance their competitors in Pittsburgh. In affirming the trial court's determination that the Allegheny County tax was unconstitutional, we noted that "[a]n examination of the incidence of this tax and its effects establishes that a substantial portion (perhaps a majority) of the class taxed are afforded no benefits whatsoever, while being significantly burdened." *Monzo,* 500 A.2d at 1104. In the instant matter, however, the trial court's findings, which are supported by the evidence, indicate that a majority of the hotels in the County will, indeed, benefit from the convention center, and thus, benefit from the tax and that room demand for those hotels will not be lost as a result.

Finally, as noted above, it is the burden of Appellees, as the parties challenging the constitutionality of the tax, to establish that the tax is unconstitutional. However, they presented no evidence respecting how much money they would lose to the adjoining hotel each year, which is the precise finding that the Commonwealth Court directed to be made. Indeed, the only evidence presented on the issue of increased competition came from Mr. Chiccarine who essentially testified that the existing hotel market in Lancaster County was already highly competi-

tive and that adding yet another hotel to the market would only make it more competitive. Thus, even assuming the issue of increased competition was relevant, to permit a remand would, in effect, provide Appellees a second chance to prove their case.

Similarly, the Commonwealth Court's further conclusion, that the trial court erred in not finding the tax to be a burden *per se* is not supported in law, but rather simply represents that court's view that certain additional evidence should have been presented. Moreover, a portion of the Commonwealth Court's reasoning directly contradicts credibility determinations made by the trial court and supported by the evidence.

In order to properly address this issue, a review of the Commonwealth Court's reasoning on this issue is necessary. In support of its conclusion that the burden imposed by the imposition of 3.9% room tax is a "given," the Commonwealth Court recited testimony of Appellees which indicated that because of the tax, some of the existing hotels were unable to raise their room rates and some of them opted to absorb completely the cost of the tax to retain business paid for prior to the imposition of the tax. Based upon that conclusion, that the burden from the tax is a "given," the Commonwealth Court concluded that it was therefore error on the part of the trial court not to consider any potential lost profits caused by the tax. The court ultimately concluded its analysis by holding that it is thus necessary to remand for findings respecting when and to what extent the convention center operations will generate revenue to the existing hotels that are collecting the tax. Not only is this reasoning disjointed, it also is without support in the record and has no basis in the law.

First, the trial court did not find that the tax was **not** a burden; rather it determined, based on the evidence presented, that Appellees had failed to present sufficient evidence to demonstrate that the benefits and burdens were disproportionate. Such an analysis is in complete conformity with this Court's prior decisions in *Torbik, supra* and *Leventhal, supra.*

Second, to get to the conclusion that the tax is a burden *per se,* the Commonwealth Court relied upon evidence presented by Appellees that the trial court had specifically found either not credible or not persuasive. Specifically, the court noted that there was testimony that the hotels were unable to raise rates due to the imposition of the tax and that some hotels even chose to lower their rates to better compete, thus it was error for the court not to consider lost profits. Contrary to the Commonwealth Court's conclusion, the trial court did not neglect to consider the issue of lost profits. Rather, the trial court found that Appellees had failed to present sufficient evidence to establish any lost profits resulting from the imposition of the tax. See Findings of Fact, Nos. 36–39, 42–45. In response to Appellees' claim, the trial court, in its opinion, explained those findings and the court's conclusion respecting the issue of lost profits as follows:

First, the Court is satisfied that the proof of lost profits caused by the supposed inability to raise rates was too nebulous for consideration. The only evidence which was available on the issue was [Appellees'] own self-serving testimony that they were unable to raise rates. This evidence also flew in the face of the Smith Travel Reports, which indicated that through October of 2000, Lancaster County hotels were charging the highest rates ever over the same period. Regardless, there was no solid proof that more could have been charged by [Appellees] or that they indeed intended to charge more than the current rates, which were the highest average rates ever. Second, the Court did not dismiss this evidence based on the fact that lost profits are not fundamental property rights. Rather, the Court noted this as going to the weight of such evidence. In other words, not only was it nebulous, but as a general proposition, it was not a constitutionally protected loss. The Court found that both facts seriously undercut the weight of such evidence.

Tr. Ct. op. at 9–10. Clearly, the trial court made a credibility determination as to this issue which the Commonwealth Court simply ignored. As we stated in *Torbik:*

It is within the province of the trial judge, sitting without a jury, to judge the credibility of the witnesses and to weigh their testimony. On appeal, it is not the duty of the appellate court to find the facts, but to determine whether there is evidence in the record to justify the trial court's findings of fact. This Court is bound by the trial judge's findings unless those findings are not based on competent evidence.

*Torbik,* 696 A.2d at 1145–46 (citations omitted). Since, as mentioned above, the record supports the trial court's findings, we are bound by those findings.

█ Given the previous discussion, the Commonwealth Court's ultimate conclusion, that the matter needs to be remanded for further findings respecting when and how much revenue the hotels can expect to receive revenue once the project is completed, is not only without support in the record, but also without support in the law. Our prior case law does not set forth a checklist of criteria that must be considered in each instance. Rather, as noted above, the trial court is put to the task of weighing the evidence presented to determine whether the benefits and burdens imposed by the tax are disproportionate. *Torbik, supra; Leventhal, supra.* We have never held that precise calculations and projections are necessary, nor have we held that the timing of the benefits to be reaped by the imposition of the tax is of critical import. Nor have we quantified and/or qualified the evidence necessary to render a proper benefit and burdens analysis. Instead, we have simply reviewed the findings rendered by the fact finder regarding the harms occasioned by the tax and the benefits to be reaped thereby and determined if those findings are supported by the evidence. Since Appellees did not produce evidence in the first instance as to what projected revenues would be once the convention center operations were underway and when the hotels could expect to receive such revenues, to allow the Commonwealth Court's resolution here to stand would effectively give Appellees further opportunity to establish their claim.

Accordingly, for the reasons expressed above, the Order of the Commonwealth Court is vacated. Further, the matter is remanded to the Commonwealth Court for an expedited disposition of the remaining issues that were not addressed by the court in the first instance.